## Johnny Vasquez v. The State.

No. 22198.  Delivered October 21, 1942.
Rehearing Denied February 10, 1943.

The opinion states the case.

*J. Fielding Jones* and *J. L. McGarity,* both of Austin, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

Johnny Vasquez was convicted by a jury in Travis County on a charge of rape and was assessed the penalty of death, from which this appeal comes.

Appellant is a Mexican, a minor, but married. He and his wife were working for W. C. Kelley, who lived near Austin, it appearing that appellant's wife was assigned to the special duty of caring for their eight-year old daughter, Barbara Kay, who was not in good health, being a sufferer from sinus trouble. On the 14th day of May, 1941, in the afternoon, the little girl accompanied appellant to the barn where he went to treat the sores on a dog or to get eggs, as the child understood. Soon after they reached the barn appellant's wife called for the little girl and she returned immediately to the house. The child was not offered as a witness in the case but the grandmother, who was there, testified regarding her condition and what she said had occurred, as follows:

"She was excited and nervous as could be, and could not stay still. Barbara told me she went down there and they went in the barn to see if they could find some eggs, and the first thing Johnny did he pulled her pants down and said, 'Let's do something,' and then he got some grease and put it on her and on him, too, and then he took something out of his pants about this long and tried to get her to put her hands on it, and she would not. She said he tried to kiss her on the side of the face and she tried to hit him, and he held her arms. Her back was red, and she had grease all over her. She said he told her not to let any of us bathe her; for her to bathe herself, and for her not to put her hands down there while she was around any of us. She said it hurt her, and that he put grease on her and on him, too. I examined her enough to see that she was greasy and was red. I never noticed her clothes particularly, but they had hay in them, as did her pants and her hair."

The father and mother of the child were working in the city and returned that evening to their home a little earlier than the usual hour. After having their supper, they released appellant and his wife from their duties and permitted them to go to town. When they had gone, the grandmother told the parents what had occurred. An investigation followed which resulted in the arrest and conviction of the appellant.

Appellant had been convicted as a juvenile for a similar offense and was under a suspended sentence. Being under the impression that he was still a juvenile, the State proceeded to have this revoked and during the procedure introduced in evidence the story of the crime for which this conviction was had. It afterwards appearing that he was subject to the jurisdiction of the District Court, a charge was filed against him and the grand jury returned an indictment.

Appellant's efforts in the defense of his case are directed chiefly in support of the contention that the court erred in not sustaining his plea to the jurisdiction of the court and plea of former jeopardy on the theory that the evidence in this case was used in the hearing to revoke the suspension of the sentence in the former case. This contention cannot be sustained and, in our opinion, need not have further consideration as it is wholly without merit.

The one question presented in the appeal which has given us most concern relates to the failure of the court to instruct a verdict of not guilty because of the insufficiency of the evidence.

In addition to the statement quoted from the grandmother, appellant made a voluntary statement of the affair on the 17th day of May, 1941, from which we quote the following pertinent statement as placed in evidence by the State:

"Last Wednesday, May 14th, 1941. I took the little girl down to the barn with me to get some eggs. At that time I was doctoring Mr. Kelley's little dog for some sores he had on him; I put some salve on the dog. The little girl was there with me and I pushed her down on the hay, pulled down her pants and put some salve on her between her legs. I unbuttoned my pants, pulled my peter out, and put some salve on it; I tried to get her to feel my peter but she would not do it; I then got on top of the little girl and while I was on her I kissed her near her ear. I was playing with the little girl and was on top of her when I heard my wife call and I let her up and she ran out of the barn."

On the 16th day of May following the trouble, Dr. McIlhenney, the family physician, was called to examine the little girl, and testified as follows:

"I then went into the bed-room of the child, and she was lying on the bed quite frightened and very emotional, and I could easily see she had been put through a tremendous mental strain. I examined her from beginning to end, starting at the top of the head and going all the way down. When I examined the vulva there was no question about there being marks of contusion and irritation that could have occurred only by the introduction of an outside something— a foreign body, whether human or otherwise. The hymen was partially intact, but was quite red, showing there had been some irritation or breakage there. Unquestionably it was such a contusion or breakage that could have been caused by the introduction of a male penis."

On cross-examination he stated further:

"Q. Could it possibly have been caused from a stick? A. From the portion of the body it might have been, but from examining bruises of that sort before, and examining that child after, there was no evidence by which I could possibly substantiate that.

"Q. You say the hymen was partly intact? Elaborate on that. A. The hymen is the little closed portion of the vulva that is present there at birth. Very, very rarely is it intact for very long. Almost invariably it is broken."

On re-direct examination the witness testified:

"There was no question about there being definite evidence of penetration, to my mind, from my examination. The little girl just brought into the court-room is Barbara Kelley, whom I examined. I examined the child at her grandmother's home in Austin the day after the occurrence."

The foregoing constitutes the full statements from the evidence upon which the State relies for a conviction. We think it insufficient. (Lacey v. State, 127 S. W. (2d) 890).

In prosecution for rape, it is essential to prove penetration of the female organ by the male organ of the accused. This may be done by circumstantial evidence, though it is more frequently used to corroborate direct testimony. Logan v. State, 148 S. W. 713; Jones v. State, 153 S. W. 136; Bryan v. State, 234 S. W. 83; Blumenthal v. State, 267 S. W. 727; Petty v. State, 249 S. W. 849; Galaviz v. State, 198 S. W. 946; Doherty v. State,

208 S. W. 932; Word v. State, 12 Tex. Cr. App. 174; 35 Tex. Jur. sec. 58, p. 847. Unless there is such proof the State has failed to prove the corpus delicti.

We have reviewed the record of a great many cases similar to the one before us and find that even where the injured party testifies in the case the facts and circumstances are scrutinized with more than ordinary care. Blackmon v. State, 220 S. W. 93; Sralla v. State, 263 S. W. 911; Conner v. State, 11 S. W. (2d) 169; Gazley v. State, 17 Tex. Cr. App. 267; Petty v. State, 249 S. W. 849. Where evidence is available to the State which would give direct and positive statements on the subject of penetration but the State has failed to use it, its failure is a strong circumstance against the prosecution and, it appears, should be considered a barrier which the State must surmount with more than ordinary diligence. Such we view the present case to be. The little girl was nervous and excited and this was relied upon as a reason for the State not offering her as a witness, though she was an unusually smart child. We do not believe that it is sufficient under the facts stated to defeat the right of the accused to be confronted by the witness against him. The writer shares all of the sympathy which the State and the jury may have had for the child in her unfortunate situation and would like to relieve her completely of the embarrassment but it would set a precedent too dangerous to be sanctioned. It would be better that a guilty person may go unpunished than that this important provision of our Constitution should be ignored. The rights of the accused in the instant case, however important to him, are infinitesimal when compared to the rights of the millions which are protected by the constitutional provision involved.

It will be noted from the grandmother's testimony that the child said that the accused approached her with the statement, "Let's do something," which a child of that age might have understood or might have misunderstood. Her cross-examination, with other statements, undoubtedly could have made it more positive if the worst were true. She said that the accused "put some grease on her and on him, too, and then took something out of his pants about this long and tried to get her to put her hands on it." She said that he tried to kiss her on the side of the face and held her arms. This can go no further and mean no more than the statement quoted. The State undoubtedly had the child examined further than her res gestae staement went, and had there been more damaging testimony, it should have been presented to the jury.

Some three days after the occurrence, the accused was in the hands of the officers and made his voluntary statement. He went further than the little girl did. He said he pushed her down on the hay, pulled down her panties and put some salve on her between her legs, unbuttoned his pants, pulled his penis out and put some salve on it and tried to get her to feel it. He then got on top of her and kissed her; that he was playing with the little girl and was on top of her when his wife called her, at which time he let her go. The State introduced this statement in evidence, and if he had been willing to say more, undoubtedly it would have been included in the statement. As we see it, that amounts to a denial of penetration. Consequently the record is before us without any direct evidence of penetration from either the victim or the accused. The State then relies upon circumstances embodied solely in the statement of Dr. McIlhenney.

In discussing the authorities dealing with similar cases, we are reminded that it is more difficult to prove that a crime has been committed than to prove the participation of an individual in the commission of a crime otherwise definitely proven. The confession of the guilty party is not sufficient to support the conviction for the offense unless the corpus delicti is proven by other evidence. In addition, we have observed that this class of cases is to be scrutinized with more than ordinary care. This scrutiny should apply, not only to the testimony of the injured party as is so frequently referred to in the cases, but to all the circumstances relied upon, and particularly to the circumstance of the State failing to produce available evidence dealing directly with the subject of penetration.

In the case of Blumenthal v. State, 267 S. W. 727, Judge Morrow discussed the duty of the trial court, the jury and of this court in construing the evidence in a case of this character, saying that it required a careful weighing of the evidence with all remote and near circumstances and probabilities. He lays down a rule, supported by authorities, which we believe to be sound in all cases with special application to one of the character before us, regardless of the penalty assessed. In the event of the death penalty, the rule should at least be observed with greater seriousness. We quote:

"The law does demand, however, that the conviction be the result of a fair trial in which there is brought before the jury, in a legal manner, competent evidence of a nature and *quantity* such as would uphold the conclusion of the jury that beyond a

reasonable doubt the offense charged had been committed by the accused."

In connection with the Blumenthal case, we refer to Gazley v. State, 17 Tex. Cr. App. 277, from which we quote as follows:

"And there may be a conviction for this offense even upon the uncorroborated testimony of the injured female, although she be a child under the age of ten years. (2 Bish. Cr. Law. sec. 968; I Russ. on Crimes, 9th ed., 931.) But all the authorities agree, and especially in a case where the injured female is a young child, that this is a crime requiring special scrutiny by the jury, and a careful weighing of the evidence, with all remote and near circumstances and probabilities, in cases where the testimony of the injured female is unconfirmed by other witnesses. And it has been well said that 'it should be the care of the prosecuting officer, in every case of this sort, to seek carefully for circumstantial evidence tending to confirm the main witness.' (2 Bish. Cr. Proc., sec. 967; 4 Blacks Com., marg. p. 214; Davis v. The State, 42 Texas, 226.)"

In considering the many authorities on the subject, we reviewed with amazement the number of cases which are found in the reports where the victim was a child under ten years of age. Contemptible as it is for a boy of more mature years to even fondle the person of such an one, it is nevertheless a different crime with a different penalty to that for which the appellant is charged.

The frequency with which sex perverts seek to satisfy autoerotic emotions by the fondling of small girls is demonstrated by the number of such cases in the courts. It is inconceivable that they could expect to complete the act of copulation with a seven-year old child or younger, as is frequently charged. Hence the danger of presuming more than is proven appears to be clear. He has not acted as an ordinary rapist would have acted when a mature female is involved, and it is a dangerous guess as to what he did do when the circumstances of the case fail to clearly indicate it. Our law-makers seem to have had definite opinions on the subject and, ill advised or not, punishment is provided in keeping with their ideas. (Cabness v. State, 154 S. W. (2d) 460.). Conviction for rape is not available for the acts described by the evidence in the record.

With much consideration and full sympathy for the injured party, indulging all the contempt for the accused under his own statement which the jury must have had in fixing the death

penalty, we nevertheless reach the conclusion that there is a lack of evidence to even indicate penetration which is essential to the crime of rape and that the circumstances as testified to by the physician are inadequate within themselves to show a penetration of the female organ by the male organ of the accused. Had the evidence been different and had it included testimony to the effect that such occurred, the evidence of the physician would have been valuable as corroborating testimony, though it is insufficient, standing as it does, against the implication which we must find because the State was unable to include it within such confession and declined to place the injured party on the stand as a witness. We may reasonably suppose, in the state of the record, that the State would have been worse off had the little girl been called as a witness, otherwise it would have been done. Had there been penetration she would have been able to give some direct testimony showing that fact. The usual evidence of pain could come from none other. The fact of the presence of blood, or the lack of it, could have been shown by her.

All bills of exception not herein discussed and referred to are overruled.

For the reasons stated, the evidence is insufficient, and the judgment of the trial court is reversed and the cause remanded.

ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

The State urges in its motion for rehearing that the doctor's evidence as to the result of his examination of prosecutrix leaves no doubt of the penetration of her privates. This may be conceded, but even then only part of the burden resting on the State has been discharged. For appellant to be guilty of rape such penetration must have been effected with his privates. What appellant said about the occurrence is set out in our original opinion to which reference is made without a repetition here. In our original opinion we said his statement, in our judgment, amounted to a denial of penetration. It would have been more accurrate, perhaps, to have said that his statement was ambiguous. He said that when his wife called him he was "playing" with the little girl. Just what he meant is speculative. It surely fell short of an admission that he had penetrated her private parts with his privates. The res gestae statements of the child made to her grandmother also leave uncertainty upon this crucial point. With the utmost sympathy and understanding for the reasons which moved the State to refrain from calling

the little girl as a witness, there remains the conclusion that uncertainty regarding the point at issue could have been cleared away had the little girl told her story about the assault. No doubt she could have told what appellant was doing with his hands at the time appellant said he was "playing" with her, and thereby excluded the possibility that penetration may have been effected with appellant's fingers.

The old rule, now abandoned, was that circumstantial evidence was not receivable where positive evidence was available to prove a fact. (See authorities cited in Note 11, under Sec. 318, page 440, 18 Tex. Jur.) The text epitomizes the present trend of our holding thus:

"Apart from the viewpoint that circumstantial evidence is incompetent where direct testimony is available and not produced, *the appellate court has frequently treated the case as one of reasonable doubt where, for aught that appeared, there was available to the state testimony throwing additional light on the facts, especially in cases of the absence of testimony to show the basic facts.*" (Italics ours).

The following cases are cited supporting the text: Buford v. State, 112 Tex. Cr. R. 593, 17 S. W. (2d) 1072; Wilkie v. State, 83 Tex. Cr. R. 490, 203 S. W. 1091; Scott v. State, 19 Texas Cr. App. 325; Rodriguez v. State, 5 Tex. Cr. R. 256; Griffith v. State, 9 Tex. Cr. App. 372.

Believing proper disposition of the case was made originally, the State's motion for rehearing is overruled.