**Harold JACKSON, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 46533.**

Court of Criminal Appeals of Texas.

May 1, 1973.

---

Holland, Munn & Maverick by Chilton Maverick, San Antonio (court appointed), for appellant.

Ted Butler, Dist. Atty., John Quinlan, III, Michael P. Hodge, Asst. Dist. Attys., San Antonio, Jim D. Vollers, State's Atty., Robert A. Huttash, Asst. State's Atty., Austin, for the State.

OPINION

DAVIS, Commissioner.

Appeal is taken from a conviction for rape of a female under 18 years of age. Trial was before the court upon a plea of not guilty. Punishment was assessed at seven years.

Appellant contends that the evidence is insufficient to support the conviction.

The record reflects that appellant was a boyfriend of the two year old victim's mother, and that on May 26, 1971, appel-

lant was babysitting with the victim, while her mother was at work.

At approximately 9:00 A.M., an aunt of the victim, Lillian Moszee, came to her sister's house and observed that appellant and the victim were the only persons present. She returned at 10:00 A.M. to find the victim "dozing" on the commode and, when she attempted to get the victim off the toilet, appellant pushed her away and picked up the victim. Blood was observed dripping from the victim. After Lillian Moszee went to her grandmother's house to report what she had observed, she returned with her brother Garland Moszee and found appellant sitting on the bed pinning a diaper on the victim. Blood was observed on the bed. When questioned about the blood, appellant explained that the victim was constipated.

William Hobbs testified that he arrived at the house between 10:00 and 11:00 A.M. and observed the victim on a bloody sheet. Hobbs testified that appellant initially told him that blood came from his arm and later that it was due to the constipation of the victim.

The victim was carried to her grandmother's home by one of her aunts and, after they observed that she was bleeding from the vagina, appellant was brought to the grandmother's home. Upon being asked for an explanation of the victim's condition, appellant stated that she was constipated and "he went straight to her and pulled some toilet paper out of her." The toilet paper pulled from the victim's vagina by appellant was described as being red.

Maddie Garrison testified that appellant came to "Happy's Inn" where she was a waitress, at 4:00 or 5:00 o'clock in the afternoon, on the day in question, and told her that he had jumped on Sandra Moszee[1] and the police were looking for him. She further testified that she told appellant to go to the ladies restroom and hide, and that after the police had been to "Happy's Inn" and left, appellant told her "Maddie—the baby was constipated. I pressed down on her stomach—I kept pressing and she started bleeding from the rectum—I kept pushing and she started bleeding from down there."

Dr. Robert Huff, a resident in obstetrics and gynecology at Bexar County Hospital, and Dr. George Gross, a resident in pediatrics at the same hospital, testified that they had examined the victim during the late evening and night of May 26, 1971. Dr. Huff described the injuries to the area of the vagina: "She had a tear from the base of the lesser lips, about one centimeter in length, about a third of an average, but it was bleeding slightly. The tear extended down toward the anus. She also had a tear here at the hymen, right through the hymen ring, which was bleeding slightly, and she had a tear of the urethritis. These tears were three or four millimeters in length and bleeding slightly." Dr. Gross testified that he observed the same tears and lacerations that Dr. Huff found and, in addition, findings from surgery revealed "mass lacerations of the liver and cryptic hematomas." Dr. Gross stated bowel sounds were normal.

Both doctors testified that the injuries they found could have been caused by a male penis being inserted or attempted to be inserted into the vaginal area of the victim. Both doctors further testified on cross-examination that the injuries to the victim could have been caused by a coke bottle or fingers.

The record reflects the following upon cross-examination of Dr. Gross:

"Q. In your opinion, doctor, in your medical experience from what you have seen, do you think the baby was raped?

"A. Yes, I think so."

1. The record reflects that Sandra Moszee is an aunt of the victim.

Two explanations were given by the doctors as to why no sperm was found in the victim. Dr. Huff stated that conditions were not good for finding sperm because of the bloody fluid present in the vagina. Dr. Gross noted that an absence of sperm is not significant since the attacker may not have had an ejaculation.

The victim did not testify, being a two year old girl and unable to talk. Thus, Vasquez v. State, 145 Tex.Cr.R. 376, 167 S.W.2d 1033, is not applicable since it was impossible for the victim to testify in the instant case. In Nilsson v. State, Tex.Cr. R., 477 S.W.2d 592, this Court said:

"Proof necessary to show carnal knowledge, under Article 1187, Vernon's Ann. P.C., is that: 'Penetration only is necessary to be proved on a trial for rape.' While proof of the slightest penetration is sufficient, this element of the offense must be proved beyond a reasonable doubt. e. g., Johnson v. State, Tex.Cr. App., 449 S.W.2d 65; Hash v. State, 139 Tex.Cr.R. 532, 141 S.W.2d 345; Watkins v. State, 78 Tex.Cr.R. 65, 180 S.W. 116; Baldwin v. State, 15 Tex.App. 275; Davis v. State, 43 Tex. 189.

"Penetration may be proved by circumstantial evidence. e. g. Preston v. State, 157 Tex.Cr.R. 228, 242 S.W.2d 436; Vasquez v. State, 145 Tex.Cr.R. 376, 167 S.W.2d 1030; Word v. State, 12 Tex. App. 174. Where circumstantial evidence forms the basis for the conviction, the state must disprove every outstanding reasonable hypothesis except for the guilt of the accused for the evidence to be sufficient to support the conviction. See, Preston v. State, supra; Lozano v. State, 154 Tex.Cr.R. 229, 226 S.W.2d 118. There is no requirement that the prosecutrix be able to testify as to penetration."

It is undisputed that an object was forced into the victim's vagina. While the doctors stated that such object could have been a bottle or fingers, we deem it significant that Dr. Gross testified it was his opinion based upon his medical experience and from what he had seen that the victim was raped.

Is there an outstanding reasonable hypothesis except that of guilt of accused?

Where answers to hypothetical questions propounded to an expert witness raise an outstanding hypothesis, such hypothesis must be substantiated by other evidence in the case. In order for a reasonable hypothesis to be outstanding, there must be no competent evidence to the contrary. See Nilsson v. State, supra, 477 S. W.2d at 597, and cases cited therein.

The evidence fails to reflect any other object which could have caused the injuries sustained by the victim.

Appellant had explained to witnesses that the bleeding was caused by constipation. This hypothesis was negated by the doctors' testimony that the victim's injuries were caused by an object inserted into her vagina. Likewise, the explanation made to witnesses by appellant that the bleeding was caused by pressing on the victim's stomach was refuted by medical testimony.

The hiding of appellant from police and his apparent false statement to Maddie Garrison that the victim was constipated and that he pressed on her stomach until she started bleeding are circumstances consistent with guilt.

Appellant contends that there were other people at the house who could have attacked the victim and points to the testimony of three witnesses offered by appellant, two of whom testified that they were at the house in question around 12:30 or 1:00 o'clock. The testimony of Lillian Moszee reflects that the attack occurred between 9:00 and 10:00 A.M. Elmo Durst, testifying in behalf of appellant, stated that he was at the house at 9:00 A.M. and saw William Hobbs asleep in a chair. The testimony of Durst is in conflict with that of Hobbs who testified that he arrived at the house between 10:00 and 11:00 A.M. The

court was the trier of the facts and, as such, could believe those witnesses it chose to believe and disbelieve those witnesses it chose not to believe. Farmer v. State, Tex.Cr.App., 475 S.W.2d 753; Rhodes v. State, 441 S.W.2d 197.

The testimony of the doctors refutes appellant's contention that penetration was not shown, particularly the testimony of Dr. Gross that, in his opinion, the victim had been raped.

■ We find that the evidence disproves every outstanding reasonable hypothesis except that of guilt of appellant and conclude that the evidence was sufficient to support the conviction.

The judgment is affirmed.

Opinion approved by the Court.