Joshua V. **PEREZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–81–0678–CR.

Court of Appeals of Texas,
Houston.

May 19, 1983.

Ruben Sandoval, San Antonio, for appellant.

Bill R. Turner, Houston, for appellee.

Before SMITH, LEVY and DUGGAN, JJ.

### OPINION

DUGGAN, Justice.

Appellant was found guilty of rape by a jury which, after his plea of "true" to the enhancement count of the indictment, assessed his punishment at twenty-five years confinement. He asserts two grounds of error on appeal.

The fifty-four year old prosecutrix did not testify at trial. Her family physician and a psychiatrist both testified that, beginning some two weeks after the incident, she was hospitalized for a period of ten days because of a nervous breakdown that was, in their opinion, caused by the stress of the rape. They each further testified that, at the time of the event, she was suffering from a long-standing chronic nervous disorder, and she would in all probability require even further hospitalization if she were required to testify at trial.

Reverend Gerry Walters testified for the State that, in response to a telephone call from the prosecutrix, he had been to her home in the early evening of July 19, 1979, to give spiritual counsel to appellant, who was a visitor there. Walters testified that he left appellant and the prosecutrix between 6:00 and 6:30 p.m., and returned to his home with the understanding that the prosecutrix was going to drive appellant to an evening church service and then to the bus station, so that he could return to his family in Austin. Later that evening, at 8:00 p.m., Walters heard loud and rapid knocking at his front door, opened it, and found the prosecutrix, shaking and visibly upset. She was sobbing, wild-eyed in appearance, frightened and unable to catch her breath. Her hair was disheveled, her clothes in disarray, and her stockings torn. Walters let her into his house and she immediately exclaimed, "I have been raped." Walters asked by whom, and she replied, "By Joe, the boy who was at the house, the one you just left us." Walters suggested that he should telephone the police and she said not to do so. He asked why and she replied that appellant had spared her life; that he had talked of killing her on the way to where he let her out because he knew she would go to the police; and that she had promised not to tell police if he would let her live. By this time, Walters had led her across the living room to where she sat down in a chair. Walters tried to comfort her, and asked what had happened. He listened for approximately fifteen to twenty minutes as she proceeded," practically in a state of shock and really extremely upset," to tell him what had happened. She recounted that as she and appellant had started out from her house in her car for church services, appellant asked her to drive him instead to the house of friends. She drove out Sandy Point Road at his direction, but they could not find the location. She stopped the car for him to make a phone call after they had driven back and forth along a section of Sandy Point Road, and as she turned the car around on a dirt road or driveway off the main highway, the car stalled. Appellant then grabbed her by the throat and choked her, pulled at her dress, dragged her out of the car and beat her. Walters testified that the prosecutrix spoke of a knife and stated that appellant

threatened several times to kill her, but that she did not say whether the knife was exhibited to her or whether appellant merely told her of the knife; that appellant then raped her and "made me do it every which way". At this point, the prosecutrix asked Walters for mouthwash and to use the bathroom. Walters got her a glass of water and she went into the bathroom. When she came out, Walters testified that she said that appellant had just left her, having gotten out of her car at a nearby school, and that she had driven straight to Walter's house.

With fifteen to twenty minutes having elapsed at this point in her recounting of the incident, Walters testified that she was still shaking and had calmed down a little; that while she was coherent, she was beside herself, and that "in my opinion she never got out of it." Walters telephoned the prosecutrix' physician, and drove with her and some friends he had summoned to the hospital emergency room at about 10:00 p.m., where police were called.

Prosecutrix' physician testified that he examined her at the hospital that night; that he found semen in her vagina and matted semen in her pubic hair; that he observed an abrasion oozing blood on her knee, a tear in the hemorrhoidal area of her rectum, and a redness in the lining of her vagina. It was his opinion, based on both the prosecutrix' statements to him and his physical examination of her, that the rectal tear and vaginal redness were caused by the insertion of a penis in assaultive intercourse.

By his first ground of error, appellant alleges that the trial court erred in admitting, as res gestae statements, Walters' recounting of the alleged offense told him by the prosecutrix. He urges that the prosecutrix' statements were hearsay that did not constitute proper res gestae, but were, in fact, responses to questions that were not spontaneous nor part of the original outcry.

■ It is well-established that statements which constitute a rape victim's complaint or "outcry" are admissible in the State's case in chief as direct evidence of the complaint. This is true without regard to the spontaneity of the statements. *King v. State,* 631 S.W.2d 486 (Tex.Cr.App.1982), and cases cited therein.

■ It is additionally settled law that statements made while in the grip of violent emotion, excitement or pain, and which relate to the exciting event, are admissible as an exception to the hearsay rule under the rationale that the capacity for reflection necessary for fabrication or falsehood is negated. *King,* and cases cited herein. See also *Hanner v. State,* 572 S.W.2d 702 (Tex.Cr.App.1978).

■ As his primary basis for arguing the non-existence of res gestae under the circumstances, appellant points out that many of the prosecutrix' statements were prompted by questions asked by Walters following the offense, and that the quality of spontaneity was thus lacking. As authority, appellant cites the decisions of *Ray v. Gage,* 269 S.W.2d 411 (Tex.Civ.App.— Fort Worth 1954, n.r.e.), and *Rosenthal Dry Goods Co. v. Hillerbrandt,* 280 S.W. 882 (Tex.Civ.App.—Beaumont 1926, dism'd). However, as stated in *King,* the controlling criminal law authorities make it clear that the fact that statements are in response to questions is only one factor in considering their spontaneity. A statement made by the victim of a violent crime in response to such a question as "what happened?" affects only the weight, not the admissibility, of the reply. See also *Richardson v. State,* 458 S.W.2d 665 (Tex.Cr.App.1970), and *Mills v. State,* 626 S.W.2d 583 (Tex.App.—Amarillo 1981, PDRR). While appellant argues that admission of these statements violated his right of confrontation, "res gestae" is an exception to the hearsay rule, and it is well-settled that the right of confrontation of witnesses is inapplicable to an exception to the hearsay rule. *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

■ Here, Walters's testimony recounted statements made to him by the prosecutrix immediately following the offense, the content of which described the offense and

named the perpetrator. These statements were proper "res gestae," "outcry," or "bare facts of complaint" statements, and there was no error in their admission. Appellant's first ground of error is overruled.

By his second ground of error, appellant alleges the existence of a fatal variance between the indictment alleging rape by force under § 21.02(b)(1) of the Texas Penal Code and the proof presented, which showed not force but, at best, evidence of threats to kill under § 21.02(b)(2) of the Texas Penal Code. To the extent that appellant attacks the court's admission of Walters' testimony relating the prosecutrix' description of the incident to establish the existence of force, his argument is a variation of his first ground of error. As we hold that Walters' testimony was properly admitted res gestae statements made by the prosecutrix, our consideration here is whether there was sufficient evidence of force to sustain the indictment allegation. Both force *and* threats were proved by the State.

Cases cited by the State concern indictments alleging acts of rape by combinations of force, threat, and/or fraud; the present indictment alleges only rape by force. The case of *Brown v. State,* 576 S.W.2d 820 (Tex.Cr.App.1978), while stating that particular facts of each case determine the existence of "force," concerned an indictment alleging rape by force, threat, and fraud. There, the court held that "The cogency which one contributes to the other may be sufficient to constitute all that is required." 576 S.W.2d at 824. A similar situation was present in *Twomey v. State,* 520 S.W.2d 784 (Tex.Cr.App.1975), also cited by the State.

■ The evidence of force presented through Walters' testimony and corroborated by medical testimony was sufficient to support the indictment's allegation of rape by force. The State's additional proof of threats will not negate evidence otherwise sufficiently showing rape by force. See *Luna v. State,* 515 S.W.2d 271 (Tex.Cr.

App.1974). The second ground of error is overruled.

The judgment is affirmed.

LEVY, Justice, dissenting.

The extraordinary extension of res gestae theory presented in this case portends to me an accelerating erosion of fundamental rights guaranteed by the 6th Amendment of the Federal Constitution and by the Constitutions of most, if not all, States. See *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), which held that the Sixth Amendment right of confrontation is carried into state criminal cases by the 14th Amendment. The rights of confrontation and cross-examination have ancient roots and are certainly some of the safeguards essential to a fair trial which is this country's constitutional goal.

Here, we have no testimony by the prosecutrix—an adult female, not a little girl—concerning questions essential to any rape prosecution as to consent, force, resistance, or penetration. Indeed, the only identification testimony is that of Mr. Gerry Walters to whom she related the events, and upon whose testimony the State *entirely* relies to obtain a conviction.

I find the following reasoning both pertinent and persuasive:

Where evidence is available to the State which would give direct and positive statements on the subject of penetration but the State has failed to use it, its failure is a strong circumstance against the prosecution and, it appears, should be considered a barrier which the State must surmount with more than ordinary diligence. Such we view the present case to be. The little girl was nervous and excited and this was relied upon as a reason for the State not offering her as a witness, though she was an unusually smart child. We do not believe that it is sufficient under the facts stated to defeat the right of the accused to be confronted by the witness against him. The writer shares all of the sympathy which the State and the jury may have had for the child in her unfortunate situation and

would like to relieve her completely of the embarassment, but it would set a precedent too dangerous to be sanctioned. It would be better that a guilty person may go unpunished than that this important provision of our Constitution should be ignored. The rights of the accused in the instant case, however important to him, are infinitesimal when compared to the rights of the millions which are protected by the constitutional provision involved.

*Vasquez v. State,* 145 Tex.Cr.R. 376, 167 S.W.2d 1030, 1032 (Tex.Cr.App.1942).

I would hold that appellant was entitled to be tried in accordance with the protection of the confrontation guarantee of the Sixth Amendment of the United States Constitution, and our own Texas Constitution, Art. 1 § 10. The grotesque nature of the crime notwithstanding, such extraordinary use of res gestae theory, for which I have not been able to find precedent, denied appellant a constitutional right, with ominous possibilities of future extensions.

I would hold that his conviction must be reversed and the cause remanded.

/s/ Ben Levy
Ben G. Levy
Associate Justice