Joe Lee LEWIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–85–00778–CR

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 18, 1986.

Randy Schaffer, Houston, for appellant.

John B. Holmes, Dist. Atty., Linda West, Asst. Dist. Atty., Houston, for appellee.

Before SAM BASS, COHEN, and DUNN, JJ.

## OPINION

SAM BASS, Justice.

This is an appeal from a jury verdict of guilty for the offense of murder. The court assessed punishment at thirty years confinement. We reverse and remand.

It is undisputed that appellant fatally stabbed the decedent. Appellant, however, claimed that the stabbing was in self-defense. The decedent and appellant had argued and cursed one another. Appellant claimed that when the decedent reached into his back pocket as if he were going for a weapon, appellant grabbed the decedent's hand and "hit him" with a knife. Appellant contends that the only evidence offered by the State to suggest that the stabbing was not in self-defense was improperly admitted.

Appellant brings one ground of error. Appellant contends that the trial court reversibly erred in allowing a witness to testify about a conversation he overheard in his liquor store concerning the stabbing. Thomas LaStrape, who owned a liquor store in the area, testified that he overheard a conversation between customers in his store at about one o'clock on the afternoon of the stabbing (the decedent was stabbed at approximately one o'clock.)

Mr. LaStrape first testified outside of the jury's presence that the state of mind of the two declarants was "like excited." Mr. LaStrape, again outside the presence of the jury, testified as follows:

[Appellants' counsel] Were they talking in a normal tone?

[Mr. LaStrape] Well, sort of like raised, you know, just a little higher.

[Appellant's counsel] Like we're talking now?

[Mr. LaStrape] Its a little higher than that. You could notice the excitement in their voice.

[Appellant's counsel] Did they seem to be extremely shook up?

[Mr. LaStrape] No.

Upon the court's overruling the appellant's objection to this testimony, Mr. LaStrape testified in the jury's presence, in part, as follows:

[Prosecutor]: How would you describe their tone of voice?

[Mr. LaStrape]: It was higher than the normal conversation, you know. It was less than, you know, real jittery, excited-type conversation. But it wasn't like the tone of voice that we're speaking in now.

[Prosecutor]: They weren't screaming?

[Mr. LaStrape]: No, no.

[Prosecutor]: Would you describe their frame of mind as being excited or not excited?

[Mr. LaStrape]: I would consider it close to being excited, not excited.

[Prosecutor]: And at the time that they came in, what did they say?

[Mr. LaStrape]: Well, they were speaking between themselves, and there was some—"did you see that guy steal this guy"? And they kept on, you know, making gestures. And I—excuse me.

[Prosecutor]: So, from their conversation, did they indicate to you whether or not they had seen them?

[Mr. LaStrape]: Yes.

[Prosecutor]: And their first statement was, "did you see that guy steal that that [sic] guy"?

[Mr. LaStrape]: Yes.

[Prosecutor]: And today, can you tell this jury what it means when a person says they stole a guy?

[Mr. LaStrape]: It means taking advantage of someone, unbeknownst to the victim, like coming from behind, you know, unexpectedly.

[Prosecutor]: Catching him unexpectedly?

[Mr. LaStrape]: Yeah.

[Prosecutor]: Would it necessarily mean from behind, or could you do it from the front?

[Mr. LaStrape]: The—where I got the behind from was because one of the gentlemen, he showed me; he demonstrated, and that's the way he demonstrated it.

[Prosecutor]: When they were speaking about this event that occurred where a person was stole up on, where did you see the guy steal—did they indicate whether there was violence involved?

[Mr. LaStrape]: Yes.

[Prosecutor]: What type of violence?

[Mr. LaStrape]: A stabbing.

[Prosecutor]: And did they describe for you how that stabbing occurred?

[Mr. LaStrape]: Yes.

[Prosecutor]: And what time was it that you later heard the ambulance that you described?

[Mr. LaStrape]: Well, from the time they left, I guess maybe about seven, eight minutes after that.

[Prosecutor]: So overall, it would be roughly ten minutes from the time they had come in?

[Mr. LaStrape]: Right.

[Prosecutor]: And from what was told to you in their excited utterance at the outset, did you ever know the distance that they were from the event that they saw?

[Mr. LaStrape]: No. They indicated to me—because I heard the voices outside before they came into the building. And they indicated to me that that's where they were at that point, right in front of the liquor store looking over.

On cross-examination, Mr. LaStrape testified, in part, as follows:

[Appellant's counsel]: Do you know if they were eyewitnesses to this incident?

[Mr. LaStrape]: From their conversation, I would have been led to believe they saw it.

[Appellant's counsel]: Did they tell you they saw it?

[Mr. LaStrape]: Well, yeah. The guy—because they said they saw it. They did say they saw it.

Mr. LaStrape also testified, on cross-examination, as follows:

[Appellant's counsel]: Okay. You heard them coming into your store. They weren't running in your store, were they?

[Mr. LaStrape]: No.

[Appellant's counsel]: They were just walking normally into your store?

[Mr. LaStrape]: Well, they walked in.

[Appellant's counsel]: Just as a normal walk?

[Mr. LaStrape]: Yes.

[Appellant's counsel]: You heard a conversation. You heard them talking. Okay. But you didn't hear an entire conversation at that point in time as they entered the store; is this true?

[Mr. LaStrape]: Well, I heard the voices talking outside of the liquor store.

[Appellant's counsel]: Right, uh-huh.

[Mr. LaStrape]: The voices continued. As they proceeded to come in the liquor store, it became within range. I could make out what they were saying as they stood in front of the counter, and they continued to talk about this particular incident.

[Appellant's counsel]: And at that point, you asked them what happened?

[Mr. LaStrape]: After I waited on them.

[Appellant's counsel]: Oh, okay.

[Mr. LaStrape]: They bought the bottle of gin. In the middle of their conversation, you know, "May I help you?" "I'd like a half pint of gin." I proceeded to make change and bag it up for them, and they continued this conversation about this incident. And that's when I proceeded to use the initiative to ask them, "What do you mean?"

■ A spontaneous utterance is an exception to the hearsay rule if:

(1) the statement is the product of an occurrence startling enough to produce a state of nervous excitement which would render the utterance spontaneous and unreflecting;

(2) the utterance is made before there is time to contrive and misrepresent, that is, the state of excitement produced by

the startling event must still dominate the reflective powers of the mind;

(3) the utterance must relate to the circumstances of the occurrence preceding it.

*Tezeno v. State,* 484 S.W.2d 374 (Tex.Crim. App.1972). It is not necessary that each of the three requisites be independently and clearly shown. The focus of the inquiry is whether the cumulative effect of the three requisites combined is sufficient to show the reliability of the statement. *Sellers v. State,* 588 S.W.2d 915 (Tex.Crim.App.1979). Statements made while in the grip of violent emotion, excitement or pain, and which relate to the exciting event, are admissible as an exception to the hearsay rule under the rationale that the capacity for reflection necessary for fabrication or falsehood is lost. *King v. State,* 631 S.W.2d 486 (Tex.Crim.App.1982); *Perez v. State,* 652 S.W.2d 581 (Tex.App.—Houston [1st Dist.] 1983, no pet.). The test to be applied in determining the admissibility of this class of evidence is the spontaneity or impulsiveness of the declaration. 1A R. RAY, TEXAS LAW OF EVIDENCE § 913 (Texas Practice 3d ed. 1980). In determining the admissibility of spontaneous declarations the element of time is an important factor to take into consideration, but it is not the controlling factor. The paramount factor, upon which time has an important influence, is whether the speaker was still dominated by the emotions generated by the exciting event. *Fisk v. State,* 432 S.W.2d 912 (Tex.Crim.App.1968); *Short v. State,* 658 S.W.2d 250 (Tex.App.—Houston [1st Dist.1983), *affirmed* 671 S.W.2d 888 (Tex. Crim.App.1984).

■ In *Solis v. State,* 492 S.W.2d 561 (Tex.Crim.App.1973), a next door neighbor of the deceased testified that an eyewitness to a shooting came screaming to her house within seconds of the shooting and told the neighbor that the defendant had shot the deceased three times in the face. The exclamation was held to be admissible. In *Norwood v. State,* 486 S.W.2d 776 (Tex. Crim.App.1972), the trial court allowed a witness to testify that the nervous and upset declarant came to her bedroom window in the early morning and said, "Glenn,

Sue, wake up and call the police. Norwood has a gun and is going to shoot James." The Court of Criminal Appeals held that the "psychological factors which lend credence to a spontaneous utterance were present." The testimony was ruled admissible. In *Sellers v. State*, 588 S.W.2d 915 (Tex.Crim.App.1979), the trial court erroneously admitted a statement under the excited utterance exception. The defendant in *Sellers* was accused of killing his wife. Prior to defendant's arrest, an officer went to the trailer of the defendant's landlady to take custody of defendant's children. The landlady become upset that the officer had come for the defendant's children and "some guns." The landlady repeatedly refused to let the officer take the children or the guns. During this conversation, the landlady, who was described by the officer as "mad, excited, upset, vehement and used 'rough' language," said the defendant's wife "was not shot, she was suffocated." The trial court allowed the officer's testimony. The Court of Crimi Appeals held that the admission of the landlady's statement was improper as the statement did not qualify as a spontaneous utterance. The statement was not made at the time of the startling event, the midnight visit from a police officer seeking custody of children, but only after numerous demands for the children and after the landlady telephoned the sheriff and a lawyer. The evidence did not support a finding that the startling event still dominated the declarant's reflective powers. Moreover, the statement did not relate to the startling event proceeding it. The statement involved an event—the death of defendant's wife—that had occurred several months prior. Finally, the declarant did not have personal knowledge of the described event.

In *Ward v. State*, 657 S.W.2d 133 (Tex. Crim.App.1983), the defendant was accused of killing his wife's former husband during an argument which took place in the presence of his wife. The trial court allowed a police officer to testify that the defendant's wife told and showed the position of the respective parties at the time of the shooting. The testimony was used to contradict defendant's trial testimony regarding self-

defense and defense of a third person. The Court of Criminal Appeals reversed. There was no showing that the wife was so excited or emotionally upset to render her statements admissible as excited utterances. The declarant was not shown to be nervous or excited; she merely responded to questions by the police officer at an unestablished time after the shooting.

We find that the conversation overheard by Mr. LaStrape was improperly admitted under the excited utterance exception to the hearsay rule. The conversation does not have the requisite indicia of reliability to be a spontaneous utterance.

The declarants walked into the store to buy a bottle of gin. They did not seek aid for the victim or themselves and did not call the police. They were inside the store for three minutes and, then, continued on their way. The fact that the declarants were primarily engaged in the mundane activity of buying liquor, and efficiently did so, indicates that they were not in the grip of violent emotion. Although Mr. LaStrape noticed the "excitement" in their voices, it was less than "real jittery, excited-type conversation." The declarants did not appear to be "shook-up" over the incident. Mr. LaStrape did not witness the killing and did not name or claim to know the declarants.

■ We find that there is a reasonable probability that the hearsay testimony contributed to appellant's conviction. Four eyewitnesses testified that the stabbing was in self-defense. The victim made a dying declaration that appellant stabbed him and took his money, and another eyewitness testified but did not negate self-defense. The hearsay was the only evidence specifically denying that the stabbing was in self-defense. It is more likely that it contributed to the verdict than that it did not.

We reverse the judgment and remand the cause for a new trial.

DUNN, J., dissents.

DUNN, Justice, dissenting.

I respectfully dissent.

I would hold that the declarant's statement was admissible as a spontaneous utterance.

First, the statement was definitely the product of an occurrence startling enough to produce a state of nervous excitement which would render the utterance spontaneous and unreflecting. Seeing someone stabbed is startling.

Second, the declarant's statement related to the circumstances of the occurrence preceding it. Declarant's statement, "did you see that guy steal this guy," concerns the manner in which the occurrence took place. The statement not only relates to appellant's plea of self defense, but also to the State's attempt to dispute the defensive theory. The inferences, if any, to be drawn from this statement is for the fact-finder's determination.

Third, the statement was made before there was time to contrive and misrepresent. The state of excitement produced by the startling event still dominated the reflective powers of the mind of the declarant. The declarant's utterance was made within minutes of the time of the occurrence. There was no time for the declarant to contrive or misrepresent.

The majority's interpretation of *Sellers* is incomplete. The statement made by the declarant in *Sellers* was not made when the officers arrived, but some 30 minutes later. In *Sellers* there was also testimony from the declarant's 16 year old daughter, in the next room, that she heard no shouting and the tone of the conversation was hushed. The indicia of reliability in *Sellers* is not present. The declarant had time to reflect and contrive.

In this case, the very timing of the utterance was immediately after the occurrence that produced the spontaneity of the event and has sufficient indicia of reliability to be within this exception to the hearsay rule.

The combined, *cumulative* effect of the three requisites for a spontaneous utterance is sufficient in this case to show the reliability of the declarant's statement. Considering all of the relevant circumstances surrounding the declaration, I would hold that the statement was admissible as a spontaneous declaration and affirm the judgment of the trial court.