### J. W. FORRESTER V. THE STATE.

No. 10797.  Delivered November 9, 1927.

Rehearing denied April 11, 1928.

**1.—Murder—Evidence of Appellant Being Married—Not Harmful.**

Where, on a trial for murder, the state contending that the appellant was criminally intimate with the wife of the deceased, as the motive for the homicide, there was no harmful error in forcing the appellant to testify, while a witness for himself, that he had been married, and separated from his wife prior to his living with deceased and that he had never been divorced.

**2.—Same—Continued.**

While there are numerous cases handed down by this court which hold that it was error to prove that appellant had been married several times, and had had divorce suits, we have not found any case where a reversal was ordered because of proof of only one marriage, unattended by other

prejudicial circumstances upon the trial for murder or assault. Distinguishing Webb v. State, 36 Tex. Crim. Rep. 41, and other cases cited in original opinion.

### 3.—Same—Continued.

In rape cases, however, a different rule governs, and in such cases the weight of authority is that proof that the accused was a married man, or had children is not admissible. See Smith v. State, 44 Tex. Crim. Rep. 137, and other cases cited in original opinion.

### 4.—Same — Confession of Accused — Exculpatory Statements — Charge of Court—Correct.

Where the court charged upon the exculpatory and mitigating facts contained in the confession of appellant, which followed the charge approved in the case of Jones v. State, 29 Tex. Crim. App. 21, and Pharr v. State, 7 Tex. Crim. App. 472, this charge fully protected appellant's rights. See Harris v. State, 281 S. W. 206.

### ON REHEARING.

### 5.—Same—Continuance—Properly Refused.

Where appellant complains of being denied a continuance on account of the absence of a witness by whom he expected to prove that said witness saw appellant shortly after the homicide, and "carefully observed him, both his person and his clothing as to any blood about them, and that there was none," in the light of the entire evidence we cannot agree that this evidence was sufficiently material to demand the continuance, nor was sufficient diligence shown to secure the attendance of said witness upon the trial.

### 6.—Same — Charge of Court — On Presumption From Use of Deadly Weapon—Correct.

Where the facts demand it, on a murder trial, it is imperative that the trial court shall charge the jury on the presumption arising from the use of a deadly weapon under Art. 1223, P. C., but it is not also necessary that in immediate connection with such an instruction, an acquittal should be authorized. Distinguishing Smith v. State, 57 Tex. Crim. Rep. 461, and other cases cited on rehearing.

### 7.—Same—Continued.

Article 1226 of chapter 12 of the penal code, provides: "The attack upon the person of an individual; in order to justify homicide, must be such as produces a reasonable expectation, or fear of death, or some serious bodily injury.

### 8.—Same—Continued.

A cardinal principle of the law of self-defense, long recognized, is that "To justify homicide, it is not enough that the party believe himself in danger, unless the facts and circumstances were such that the jury can say *he had reasonable grounds* for his belief." See Blake v. State, 3 Tex. Crim. App. 589.

### 9.—Same—Continued.

Speaking of the legal effect of Art. 1223, it is said: "The law provides that under such circumstances, the accused will have the right to so believe and as a matter of law the *statute* fixes the intent upon the party making the assault." See Blake v. State, supra.

**10.—Same—Justifiable Homicide—Elements Necessary—Rule Stated.**

The law of justifiable homicide requires the co-existence of these three things: (1) An attack or threatened attack, with apparent intent to kill or do serious bodily injury as viewed from the defendant's standpoint; (2) Reasonable grounds for believing that such attack, or threatened attack placed the defendant in danger of death, or serious bodily injury, and (3) actual belief in the existence of such danger.

**11.—Same—Continued.**

An attack with a deadly weapon being proven, Art. 1223, forecloses the first two of these issues, but leave the third open to proof. The defendant in no case would have the right to kill, without believing himself in danger. See Blake v. State, 3 Tex. Crim. App. 589.

**12.—Same—Withdrawing Testimony—Error Cured.**

Where the father of the wife of deceased was erroneously permitted to testify as to the conduct of appellant toward the wife of deceased, said ·that "things didn't look right to me." And the statement was stricken out as not responsive by the court, its harmful effects, if any it had, was removed.

Appeal from the District Court of Nolan County. Tried below before the Hon. W. P. Leslie, Judge.

Appeal from a conviction of murder, penalty twenty-five years in the penitentiary.

A former appeal of the case is reported in 248 S. W. 40, where there will be found a full statement of the facts.

*Stinson, Combs & Brooks* of Abilene, *John J. Ford, L. B. Allen* and *W. W. Hair,* for appellant.

*Sam D. Stinson,* State's Attorney, *Robert M. Lyles,* Assistant State's Attorney, for the State.

MARTIN, JUDGE.—Offense murder, punishment twenty-five years in the penitentiary.

A former appeal of this case is reported in 248 S. W., p. 40, where there will be found a full statement of the facts.

Appellant strenuously insists that there was error in forcing the appellant to testify while a witness for himself that he had been married and separated from his wife prior to his living with deceased and that he had never been divorced. This question would appear serious upon a casual reading of the author-ities. Due to the rather frequent recurrence of this particular question and the present condition of the authorities with reference thereto, we have endeavored to give it a painstaking investigation.

There are two lines of authorities dealing with this exact question, one in homicide and assault cases, and the other in rape cases. We will briefly review these.

In Webb v. State, 36 Tex. Crim. Rep. 41, appellant was indicted for aggravated assault upon his wife and the court speaking through Judge Hurt held that testimony was inadmissible that he had been married and divorced as many as four times, the court observing that it may have been prejudicial in view of the penalty assessed, which was a fine of $500 and one year in jail.

In the next case of Jennings v. State, 42 Tex. Crim. Rep. 78, the appellant was charged with killing his stepson and was forced to testify over objection that he had had three wives; that the first one died; the second one quit him; and the third one obtained a divorce from him. Judge Henderson, delivering the opinion, said that its tendency could only prove hurtful to appellant and when this is the case the only safe rule is to reverse the judgment. Judge Brooks dissented because the error was harmless.

Stripling v. State, 47 Tex. Crim. Rep. 117, was an aggravated assault case and the court held this character of testimony harmless in view of the minimum punishment assessed.

The case of Hightower v. State, 53 Tex. Crim. Rep. 487, was an assault to murder case, in the trial of which the state proved that appellant was married previously to a woman by the name of Ada, and then to a woman by the name of Mary, from both of whom he was separated and divorced, and was married also to a woman by the name of Catherine, who died and whose funeral he refused to attend. The court held this testimony inadmissible in that it could serve only to prejudice the rights of appellant.

The case of Fischel v. State, 14 S. W. 391, was an assault to murder case on one Wasseman, whom the husband charged with being responsible for the institution of divorce proceedings by his wife. One Meyers testified that the defendant told him he had had four wives. This was held inadmissible without any discussion further than to say that the same was prejudicial.

Lasater v. State, 88 Tex. Crim. Rep. 452, was a manslaughter conviction and the court speaking through Judge Lattimore on motion for rehearing, says: "We have concluded that it was material error to allow the state to place before the jury facts relative to the marriage of appellant and that he had been sued by each of his wives for divorce," citing the Webb, Hightower and Jennings cases, supra.

It will be noted that in all of the above cases it was proven that appellant had been married several times and in all of them but one had had divorce suits. We have not found any case where a reversal was ordered because of proof of only one marriage, unattended by other prejudicial circumstances.

Rape cases discussing this question are as follows:

In Smith v. State, 44 Tex. Crim. Rep. 137, a reversal was ordered where it was proven over objection that appellant had a wife and two children, there being in this case no issue of the fact of intercourse. Smith v. State, 74 S. W. 556, is the same case as above.

Wilkerson v. State, 131 S. W. 1108, was a case of rape by fraud, one of the fraudulent representations by appellant to prosecutrix being that he was a single man. The court held that in view of the charge it was permissible to prove that he was a married man but error to prove that he had children.

In the case of Battles v. State, 140 S. W. 783, the court speaking through Judge Ramsey, says: "It became not only admissible, but highly important, to prove the fact that appellant was at the date and time of the intercourse a married man, as lending support to the state's contention, and as evidence of a line of conduct out of harmony with any innocent purpose." In this case the act of intercourse was in dispute and the female under fifteen years of age.

Judge Harper in the case of Smith v. State, 188 S. W. 984, held that the admission of this character of testimony would not be error since it was necessary to show that he was not married to the prosecuting witness. No authorities are cited by him and his language appears to be in precise conflict with the case of Smith v. State, 44 Tex. Crim. Rep. 137.

In the recent case of McDuff v. State, 103 Tex. Crim. Rep. 668, it was held inadmissible to prove that appellant had a wife and two children, and in the Hagood case, 292 S. W. 904, it was held admissible to prove that appellant was a married man, it appearing that same was res gestae.

From the above it will be noted that such character of testimony has not uniformly been held inadmissible, nor could there be any reason for so holding as applied to all cases irrespective of the facts proven. The materiality and prejudicial character of a given fact must be measured by its relation to the entire case. Of necessity it cannot be detached and isolated from all of its surroundings and thus measured to determine its prejudicial character. So, the above testimony, as any other, must

be considered in its relation to all the evidence introduced. Thus considered, its admission, in our opinion, was not harmful.

The state's theory and evidence was that a criminal intimacy existed between appellant and the wife of deceased and that this furnished the motive for the killing in which no self-defense existed. Two issues were thus tendered for determination: (1) That of criminal intimacy, and (2) that of homicide without justification.

Upon the first issue the inference of criminal intimacy alone is open for determination, the fact upon which it rests being admitted, namely, that appellant and the wife of deceased slept in a room alone together in a hotel in the little town of Rotan. The appellant admits this, leaving only the inference of a criminal intimacy from this admitted fact to be found by the jury. Would proof of his then having a lawful wife likely cause the jury to resolve this inference against him? Rather it would seem that proof of an existing marital obligation tend somewhat to render the existence of such intimacy less probable. Keeping in mind the important fact that appellant admits the truth of the state's evidence of the hotel opisode, we cannot believe that the conclusion to be drawn therefrom would likely be adversely influenced by proof of a marital status which did not comport with such criminal conduct.

Upon the second issue of whether an unlawful homicide occurred, it seems clear that a jury believing that the state had established the fact of criminal intimacy as a motive would not be influenced to decide such an issue adversely to appellant any quicker if he were married than if he were single. The important and controlling distinction between this and the rape cases cited lies in the fact that in this case it was the status of the female which made the evidence of intimacy particularly prejudicial, whereas in the rape cases it was the status of the appellant which rendered same so. In the instant case the criminal intimacy was with a married woman whose status precluded an intimate association alike as well to single as married men. Certainly in ordinary felonies, as arson, forgery and the like, it is not ordinarily prejudicial to prove that the appellant is married. Having established the fact that a man, taking advantage of the hospitality and confidence of his boyhood friend, stole the affections of his wife and despoiled her, what difference could it make whether such an act was committed by a man married or single? Proof of the association and criminal intimacy of a married man with a young girl in a rape case might tend to inflame the jury much more than in

the case of a single man whose status does not preclude his association with her but in the case of a married woman, neither of these any more than the other has the right to her association. It might be added further that whatever harmful effect, if any, it had, was lessened because proof of the marriage status of appellant tended to disprove the state's theory that appellant wanted to possess himself of the wife of deceased, since his marriage status precluded the consummation of such purpose by either a common law or a statutory marriage to her.

We believe that under the peculiar circumstances of this case there was no prejudicial error in the admission of this testimony.

The court charged upon the exculpatory and mitigating facts contained in the confession of appellant in accordance with a holding of this court on the previous appeal. Complaint is made of this charge for various reasons but an examination of same shows that it is, with the exception of its context, in the exact language of a charge approved in the cases of Jones v. State, 29 Tex. Crim. Rep. 21, and Pharr v. State, 7 Tex. Crim App. 472. Besides, the court affirmatively instructed on self-defense in accordance with the defensive issues raised by such confession as well also as giving the customary charge on the law of murder. This fully protected appellant's rights. Harris v. State, 281 S. W. 206.

We have examined appellant's remaining bills of exception and finding no error in any of them, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

MARTIN, JUDGE.—In a motion for rehearing appellant vigorously insists that his motion for a continuance should have been granted by the trial court and that we erred in not so holding. By one F. E. Fulsom, appellant alleges that he could have proved that shortly after the homicide he "carefully observed the defendant, both his person and his clothing, as to any blood about the defendant or his clothing and that there was none." It is alleged the materiality of this arises from the fact that the proven circumstances of the killing were such that in all probability whoever did the killing would have blood spots on his body or clothing and that deceased, Posey, had

blood specks on himself, thus indicating he himself had murdered his wife and then committed suicide. And further that the state proved the presence of a bloody rag in a pan of water in the room after the killing, which tended to show that appellant had washed blood from his person or clothing. It was perhaps an hour after the killing before Fulsom arrived and saw appellant. It was not contended by the state that there were any evidences of blood on appellant at that time. Appellant testified he had none and it was not denied or attempted to be. It is not alleged in the motion, as it is in the brief, that appellant could have proven by the witness that the clothing bore no evidence of having had blood stains removed from it. Many other persons were around appellant with said witness who appear to have been present at the trial and they are not shown to have been hostile and no satisfactory reason is given for not having used them to prove the same facts to which Fulsom would have sworn. This court will look to the evidence produced on the trial in passing on this bill. Willison v. State, 7 Tex. Crim. App. 400. Branch's P. C., p. 183. Appraising it in the light of the entire record, we do not believe it reasonably probable that the testimony of this witness would have changed the result of the trial. Moreover, it further appears that witness resided in Williamson County. No attachment was asked for. The trial continued for several days. It seems that diligence was lacking in attempting to procure the attendance of the witness.

Appellant's evidence raised the issue of an attack by the deceased, Posey, upon him with an iron bar. Responding to this evidence the court charged in paragraph 19 of his instructions on the presumption arising from the use of a deadly weapon under Art. 1223, P. C., in the following language:

"You are charged that if you believe from the evidence that at the time B. F. Posey, the deceased, was shot by the defendant that the deceased was making or about to make an unlawful or violent attack upon the defendant, J. W. Forrester, or was making or about to make an unlawful or violent attack upon Mrs. Maggie Posey with an iron bar capable of producing death or serious bodily injury, then in that event the law presumes that the deceased intended to kill the defendant, or Mrs. Maggie Posey, or both of them."

It is insisted that he should have made application of this to the facts and that same as given was only an abstract statement of the law. If we comprehend appellant's point, it is that in

immediate connection with said instruction an acquittal should have been authorized if the jury believed that an attack of the above character was made by deceased or if they had a reasonable doubt thereof. The books are full of cases where reversals have been ordered for failure to charge the statute on the presumption arising from the use of a deadly weapon, but we are without precedents to guide us in the determination of the exact question raised by appellant, so far as we have been able to ascertain. The case of Smith v. State, 57 Tex. Crim. Rep. 461, is cited by appellant in support of his position. However, the exact point was not under consideration in the Smith case, as is apparent from an analysis of same. No charge of any kind had been given in that case upon the presumption from the use of a deadly weapon and the court contented itself merely with saying that a quoted special charge was in substance Art. 676 (now 1223, P. C.) and should have been given, citing authorities. The authorities cited do not discuss appellant's contention in this case and seem to go no farther than to hold, as many others do, that this article of the statute should have been given in charge. The Smith case has been subsequently followed in Medford v. State, 89 Tex. Crim. Rep. 6, and Bankston v. State, 76 Tex. Crim. Rep. 507, without apparently noticing that the special charge requested contained more than the language of the statute and each of these cases merely reaffirmed the doctrine that what is now Art. 1223, P. C., must in such case be given in charge. Other cases recognize that a charge must be given similar to the one in the instant case where the alleged weapon was not per se deadly.

The effect of sustaining appellant's position would be to hold that the right to kill exists if the party slain was using a deadly weapon, irrespective of the slayer's belief that he was in danger of death or serious bodily injury.

Chapter 12 of the Penal Code contains the law of justifiable homicide in Texas. The said Art. 1223 is a part of this chapter. There has been set into this same chapter following Art. 1223, Art. 1226, reading as follows:

"The attack upon the person of an individual in order to justify homicide must be such as produces a reasonable expectation or fear of death or some serious bodily injury."

This article imperatively requires the presence of a reasonable expectation or fear of death in the mind of the slayer before the right to kill exists. Its terms are plain, unequivocal and certain, and in precise opposition to appellant's theory which is only a deduction from the language of Art. 1223.

What place in the law of self-defense does Art. 1223, P. C., occupy? A cardinal principle of the law of self-defense long recognized was expressed by Judge Ector in the following language:

"To justify homicide * * * it is not enough that the party believed himself in danger, unless the facts and circumstances were such that the jury can say *he had reasonable grounds* for his belief." Blake v. State, 3 Tex. Crim. App. 589.

Speaking of the legal effect of Art. 1223, Judge Davidson says:

"The law provides that under such circumstances the accused will have the right to so believe and as a matter of law the statute fixes the intent upon the party making the assault."

The law of justifiable homicide requires the co-existence of these three things:

(1) An attack or threatened attack with apparent intent to kill or do serious bodily injury as viewed from the defendant's standpoint.

(2) Reasonable grounds for believing that such attack or threatened attack placed the defendant in danger of death or serious bodily injury.

(3) Actual belief in the existence of such danger.

The second is a corrollary of the first.

An attack with a deadly weapon being proven, Art. 1223 forecloses the first two of these issues, but leaves the third open to proof. That is to say neither the court or jury in such case may further speculate upon the intent of the deceased or whether the slayer had reasonable grounds for believing himself in danger of death or serious bodily injury, and can only pass upon the existence of the third issue, finding the defendant not guilty if they believe same existed or have a reasonable doubt thereof. The jury in all homicide cases must find the existence of a fear of death or serious bodily injury before an acquittal is authorized. The defendant might have good grounds for not fearing any harm to himself even though his adversary were attacking with a deadly weapon. Would it be a sound rule to announce that the defendant in such case would have the right to kill without believing himself in danger? We think not.

The charge of the court in the instant case was very comprehensive on self-defense and its paragraphs taken together fully comply substantially with the views herein expressed, and gave the appellant all he was entitled to.

The charge taken as a whole in effect assumed in case of such an attack: (1) An intent to kill by deceased, and (2) that such an attack was reasonable grounds for a fear by appellant of death or serious bodily injury. The third required issue, viz.: a belief or fear of death or serious bodily injury was properly submitted and found by the jury against appellant.

While the court should have so connected paragraphs 18 and 19 in such way that the jury would have understood they were to be considered together, we do not think this omission was such error as justifies a reversal.

Paragraph 19 of the court's charge, first quoted above, is inaccurate, and its form is not commended. Under other facts it would be a charge on the weight of the evidence and the necessary clause "from the manner of its use" was omitted. It was, however, not attacked in these particulars.

Witness Hall, father of Mrs. Posey, stated in the presence of the jury, when asked if he had occasion to observe the conduct of appellant with his daughter, that "things didn't look right to me." This answer was stricken as not responsive. No special charge was asked to disregard this. The court did all he was asked to do to remove its harmful effect, if any it had, and we do not think the matter presents such prejudicial error as would require reversal. Especially is this true in view of appellant's own admission as to his conduct with deceased's wife. The jury having heard appellant admit that he and Mrs. Posey slept alone in a hotel room together all night could not, in our opinion, have gotten badly excited over or been prejudiced by the above statement.

Other questions are presented, which have been carefully examined, and are, in our opinion, without merit. Their importance does not seem to justify extending this opinion by any further discussion.

Believing that we correctly disposed of all legal questions in the original consideration of this case, appellant's motion for rehearing is overruled.

*Overruled.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.