**William Ted WILHOIT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 62292.**

Court of Criminal Appeals of Texas.

Sept. 15, 1982.

Ed Paynter, Abilene, for appellant.

Patricia A. Elliott, Dist. Atty., Jorge A. Solis, R. Jack Grant and James Eidson, Asst. Dist. Attys., Abilene, Robert Huttash, State's Atty., Austin, for the State.

Before ODOM, TOM G. DAVIS and CLINTON, JJ.

## OPINION

CLINTON, Judge.

The offense is aggravated rape; the punishment is confinement for forty years.[1] The offense is alleged to have occurred September 20, 1978; the indictment was returned October 20, 1978; trial commenced November 27, 1978. In thirteen grounds of error appellant complains of rulings made by the trial court from indictment through the trial to the final charge of the court on the merits.

■ We begin with the indictment. As to the primary offense, it alleges that the stated place and given date appellant did

"unlawfully, intentionally and knowingly by *force,* that overcame such earnest resistance as might reasonably be expected under the circumstances, compel D——— H———,[2] a female not his wife, to submit to and participate in sexual intercourse without her consent; and the said [appellant] did then and there unlawfully, intentionally and knowingly compel the said D——— H——— to submit to sexual intercourse by *threat* of death and *threat* of serious bodily injury to be imminently inflicted on the said D——— H———, . . . ."[3]

Thus, though more detailed in its allegations, the theory of the indictment is reminiscent of the charging instrument drawn up in *Rucker v. State,* 599 S.W.2d 581, 585–586 (Tex.Cr.App.1979–1980): rape by force, aggravation by threat. V.T.C.A. Penal Code, §§ 21.02(a) and (b)(1), as it was reiterated in the amendments that became effective September 1, 1975,[4] and 21.03(a)(2).

First, appellant contends the indictment is defective in that it does not clearly aver that *he* had sexual intercourse with Deb, arguing that it may be read to mean that he compelled her to have sexual intercourse with someone else. On the authority of *Patterson v. State,* 598 S.W.2d 265, 271 (Tex.Cr.App.1980), rejecting a similar contention, ground of error one is overruled. And see *Johnson v. State,* 583 S.W.2d 399, 403 (Tex.Cr.App.1979).

During the voir dire examination of the venire, the prosecutor asked if anyone on the panel were acquainted with appellant's family, saying, "I believe his wife is seated

---

1. On account of a prior conviction for burglary, to the allegation of which in the indictment appellant pleaded true, the jury was authorized to choose a term of years between fifteen and ninety nine or life. V.T.C.A. Penal Code, § 12.42(c).

2. The victim will be called "Deb," though that is not her true name, when we come to a recitation of the facts.

3. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

4. See Acts 1975, 64th Leg., p. 476, ch. 203, § 1.

back there." The objection voiced by appellant was sustained, the prospective jurors were instructed not to consider the statement but appellant's motion for mistrial was overruled. Also, during examination of a former employer of appellant the prosecutor asked, "Did you ever meet his wife?" Again, objection sustained, instruction to disregard and motion for mistrial overruled. Then, as the prosecutor was cross-examining a witness for the defense, the witness unresponsively volunteered he had twice seen appellant "with his wife" at their place of employment.[5]

■ That there is a well established rule in this State regarding trial of rape offenses that, unless it tends to solve some issue in the case, error attends proving that the accused is a married man, is the lesson of *Johnson v. State,* 164 Tex.Cr.R. 204, 298 S.W.2d 132 (1957). See also *Hanner v. State,* 572 S.W.2d 702, 706 (Tex.Cr.App. 1978); *Thompson v. State,* 168 Tex.Cr.R. 320, 327 S.W.2d 745, 748 (1959); *Forrester v. State,* 109 Tex.Cr.R. 361, 4 S.W.2d 966, 968 (1928); cf. *Lassere v. State,* 458 S.W.2d 81, 82 (Tex.Cr.App.1970) cert. denied 401 U.S. 920, 91 S.Ct. 906, 27 L.Ed.2d 822 (1971). However, the thrust of the rule is against the State, barring it from adducing evidence on a matter that is not material to resolving the issue of whether an accused committed the offense of rape or aggravated rape. *Johnson v. State,* supra, and cases cited therein. Thus, the observation expressed by the District Attorney during voir dire and the question propounded to appellant's former employer were clearly improper, and the trial judge was absolutely correct in sustaining appellant's objection

and instructing the jury to disregard them. The effect of his doing that, we are satisfied, cured the error and rendered harmless the improprieties. *White v. State,* 444 S.W.2d 921, 922 (Tex.Cr.App.1969); *Weaver v. State,* 129 Tex.Cr.R. 317, 86 S.W.2d 758, 759–760 (1935); cf. *Cavender v. State,* 547 S.W.2d 601 (Tex.Cr.App.1977). Ground of error six is overruled.

■ The observation recalled by appellant's coworker surely conveyed his conclusion that appellant was married.[6] However, the comment was not purposefully elicited by the State as a matter of proof that appellant was married at the time the offense was committed, and that is what the rule seeks to prohibit. Thus, the incident is not chargeable to the State, and it does not appear that the prosecutor attempted to capitalize on the volunteered remark in any manner. See *Weaver v. State,* supra, 86 S.W.2d at 759; see also *Johnson v. State,* supra, 298 S.W.2d at 134, in which this feature of *Weaver* is alluded to approvingly. We overrule ground of error seven.

■ The sufficiency of the evidence is challenged in a narrow aspect, and many grounds of error are best understood by a recitation of salient facts. So, we will capsule the basic facts and circumstances of the offense, and then elaborate particulars in considering the specific grounds of error to which they relate.

The victim, Deb, was twenty six years old, married and the mother of two minor children. Shortly before noon on the occasion in question, she had put the children down for a nap. Her husband being away on a business trip, she locked all outside

---

5. The witness had been a fellow employee, and he was called to testify concerning his observations about appellant wearing eyeglasses or contact lens while he worked as a bread person and fry cook. On crossexamination the following occurred:

> "Q: So, you saw him strictly as another *employee* at work at the Town Crier as both of you would be on duty?
> A: I saw him I believe twice when he came in with his wife."

Appellant urged an objection to "any statement about wives," which was overruled and re-

quested instruction denied; appellant objected that the answer was unresponsive, but that one was also overruled.

6. We note that appellant's employer testified that he last worked for him in May 1978—almost four months before the date of the instant offense. Nevertheless, the Court has suggested that even the fact that an accused "had been married at one time" should not be admitted in evidence. *Leach v. State,* 154 Tex.Cr.R. 560, 299 S.W.2d 809, 810 (1950).

doors to the residence and went into the bathroom to dry her hair. Believing that no other adult was in the house, Deb was startled to hear a man's voice shout either "raise your hands," or "put your hands behind your back." Turning toward the voice, and thinking her husband may have returned or somebody she knew was teasing, she laughed and asked, "Is this a joke?" But she saw a man who was a complete stranger. The man, later identified as appellant, was exhibiting an eighteen inch weapon she first thought was a sawedoff shotgun but noticed the barrel was too thin; it was more like "an antique gun or a dueling pistol" for it showed some scroll metal work. Pointing the long barrelled pistol at Deb, appellant ordered her to put her hands behind her back, to turn around and put her hands behind her back. Deb said she "would cooperate if he just would not hurt me." Appellant then asked if there were any drugs or money in the house and Deb responded there were no drugs but "there's some money in piggy banks." With her hands behind her back, appellant put some kind of metal device over each thumb—they would come to be called "thumb cuffs"—that were connected by some type of chain, and when finally fixed by appellant served to restrain movements of her hands and arms. Inside the device were little prongs that poked into the skin, and Deb complained they hurt her—to no avail. Still standing behind her, appellant told Deb to go into the bedroom; though she could not see where the weapon was at the time, she was frightened and "thought he was going to kill me." She also feared for the safety of her children.

After entering the bedroom, appellant closed the door. Inside he stripped Deb of her shorts and underpants and told her to lie across the bed, on her stomach. Appellant removed all his clothing and then had Deb turn over on her back, causing her body to press on the thumb cuffs and hurt her thumbs. She again complained, asked that the cuff be removed, stated that she would cooperate—but in vain. We pretermit a discussion and the "foreplay" and eventual penetration that followed. Suf-

fice to say that the sexual intercourse ended when Deb tried to bite the tongue that appellant stuck in her mouth, and simultaneously jerked her lower body away leaving appellant to ejaculate on her leg. Continuing to feel thumb pain, she practically demanded that appellant "undo my thumbs." Instead, he acquired from the bathroom a wash cloth and returned to "wipe me up" with it. That done, appellant told her to turn over on her stomach; though she was not able to see what he was doing, she heard a jingling and thought it was made by "keys or whatever opens" the cuffs. Instead, appellant was dressing. He helped her up from the bed, led her into the bathroom and then removed the thumb cuffs.

Returning to the subject of money, appellant was diverted from piggy banks in the childrens' room by Deb saying she had put it in a bank account but offered her checkbook in her purse on a table by the front door. Appellant told her to lock herself in the bathroom. Minutes later she came out and appellant was gone, leaving the same way he had entered—through a door into the garage that had not been secured with a deadbolt lock.

Deb testified that she submitted to sexual activities and intercourse "because he had a gun." She acknowledged on cross-examination that appellant never "threaten[ed] in words with harm" to her or anyone else; she was never "given choices of conduct," conditioned on consequences.

Appellant fled, but a neighbor who knew appellant on sight, she being the wife of his former employer, watched as he ran from a vacant lot with a brief or attache case in his hand, crossed the street in front of her home, got in a car she had earlier noticed parked near her driveway, and sped away. Meanwhile Deb had called the Abilene Police Department, and the investigation that was soon to lead to appellant got under way. Learning he was a suspect, appellant evaded apprehension while he contacted a local lawyer. He spent at least one night away from home; on the third day he left the county and drove around for several hours in a borrowed car, only to be arrested

when he came to return it. At trial appellant denied committing the offense and presented a plausible defense of alibi—he was at home at the time Deb was raped, preparing to move his place of residence to another part of town. Of course, the jury rejected his defense.[7]

We have said enough to indicate also that the evidence is generally sufficient to support the verdict of the jury, and appellant does not contend it is not. Rather, he focuses on the element of penetration to point out in ground of error ten that the evidence adduced by the State is "contradictory at best" and, therefore, should be held insufficient. But, in deference to the opinion of the Supreme Court in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), this Court now inquires "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *id.,* 443 U.S. at 318–319, 99 S.Ct. at 2788–2789 (emphasis in original). *Griffin v. State,* 614 S.W.2d 155, 156, 158–159 (Tex.Cr. App.1981).

That Deb may have informed the investigating officer "she didn't know whether the man's penis was erect or not," and though the physician who examined did not visually observe manifestations of sexual intercourse,[8] the jury also heard testimony from a chemist, who analyzed material on slides prepared by the physician with smears from her cervix and the posterior fornix of her vagina, that he found a strong presence of acid phosphatase, indicating recent sexual intercourse. That a fingerprint or pubic hair comparison was not made, and there were minor discrepancies in the testimony about time were matters for the jury to deliberate, and sort out in finding the facts. All essential elements of the offense could be rationally found from the evidence. *Brown v. State,* 576 S.W.2d 820 (Tex.Cr. App.1979); *Church v. State,* 552 S.W.2d 138, 140 (Tex.Cr.App.1977); *Harris v. State,* 473 S.W.2d 37 (Tex.Cr.App.1971). The tenth ground of error is overruled.

▮ The wash cloth appellant used to clean Deb became State's Exhibit 1, admitted over the objection of appellant that a continuous chain of custody had not been shown by the prosecution. Deb had told the investigating officer where the rag could be found. While she was testifying Deb was shown the exhibit, then only marked for identification, and answered affirmatively that it "does look like the same wash rag" and that, except for holes, it "does appear to be the same." The investigating officer was the next witness, and, being shown the exhibit, said he recognized it and that it was the same wash rag found by him at the instance of Deb. There is more testimony from others about how the exhibit got to a DPS laboratory for analysis and then back to the courtroom at trial. However, we need not recite it for the only link appellant claims is missing is that the record fails to show who was meant by the testimony of the last officer to handle the exhibit and the envelope containing it, that he delivered them to the lab technician whose name he did not recall—"the same fellow that just left the courtroom." The DPS chemist, who also identified the wash cloth he tested for acid phosphatase, had just testified and left the courtroom, as the jury and all others in it could plainly see. There is no suggestion whatsoever that the exhibit had been tampered with. The thirteenth ground of error is without merit, *Salinas v. State,* 507 S.W.2d 730, 731 (Tex. Cr.App.1974), and is therefore overruled.

---

7. Appellant, though then twenty five years old, a senior Bible major at Abilene Christian University and a preacher, was also a "fourtime loser," having been convicted of three burglary offenses in Fort Worth and imprisoned on concurrent sentences and of a federal firearms charge of possessing an unregistered firearm, apparently taken in one of the burglaries; he had been released on parole to Abilene.

8. The doctor explained that it would be impossible to detect recent sexual intercourse through a physical examination of a woman who had borne children vaginally or had sexual exposure over a period of time, as Deb certainly had.

In an effort to identify her assailant Deb and her husband went to the Abilene Police Department, and she looked at photographs until she picked out a likeness of appellant. On direct examination she so testified, without objection. Her husband was called by the State and to every question about the same incident, appellant objected on the grounds of "bolstering." He now points to the following as most egregious:

"A: We were shown the books, two books first. After my wife finished looking completely through both books there was no one in there that she could identify. At that time there were single pictures that were given to her, I believe there were six of them. My wife looked at those pictures and at that time she made an identification."

The investigating officer similarly was allowed to testify over the same objection voiced by appellant:

"Q: Was William Wilhoit's picture in that picture line-up?

A: Yes, it was.

[Objection to bolstering overruled.]

Q: Did [Deb] pick out a picture of her assailant from that line-up?

A: She did.

[Objection to bolstering overruled, instruction to disregard denied and motion for mistrial rejected.]"

Thus, grounds of error four and eight invoke the rule of *Lyons v. State,* 388 S.W.2d 950 (Tex.Cr.App.1965), *viz*:

"It is the rule that while a witness who had identified her assailant at the trial may testify that she also identified him while he was in custody of the police, others may not bolster her *unimpeached* testimony by corroborating the fact that she did identify him."

The State halfheartedly suggests the rule is not applicable to the testimony of Deb's husband in that "at no time did [he] state that his wife had identified the Appellant." Likewise, with respect to the officer: he

"*did not* say that [Deb] identified the picture of Appellant [emphasis by the State]." Nevertheless, the "*Lyons* rule" has been so weakened by explanations and distinctions that it is futile for an accused to invoke it if he has merely "*attempted* to impeach an eyewitness," *Smith v. State,* 595 S.W.2d 120, 126 (Tex.Cr.App.1980), one of the most recent expressions to that effect. Appellant would no doubt concede that he conducted a "vigorous" crossexamination of Deb in that undertaking. See *Turner v. State,* 486 S.W.2d 797, 800–801, n. 1 (Tex. Cr.App.1972). Perforce, we are constrained to overrule grounds of error four and eight.[9] *Johnson v. State,* 583 S.W.2d 399, 403–404 (Tex.Cr.App.1979).

Still on the subject of State's Exhibit 1, we turn to ground of error nine by which appellant contends the trial court abused its discretion in restricting his crossexamination of the DPS chemist who testified he found acid phosphatase on the wash cloth. It will be recalled that Deb testified appellant "came all over my leg." The medical doctor who made the slides from smears and swabs also testified that a normal male ejaculation would contain "one hundred sixty million motile sperm." The chemist had testified for the District Attorney that his test detected spermatozoa on the wash cloth as well, but by the time such exhibits reach the laboratory all spermatozoa are nonmotile. On crossexamination, after appellant developed that he had found only four or five nonmotile sperm on the rag, but could not say where the balance of one hundred sixty million went; still he explained that when one or two are found the test for more is superfluous for forensic purposes. Appellant then sought to put a hypothetical question the thrust of which was if his finding four or five nonmotile sperm was consistent with the entire ejaculent being wiped up with the wash rag. The objection voiced by the State was that the hypothet assumed facts not in evidence; it was sustained. Perfecting his bill out of the presence of the jury, appellant drew from the chemist that "if everything is in order, I

9. As he dissented in *Smith v. State,* supra, at 126, the writer of this opinion regrettably contributes to the ebbing of *Lyons,* but is obliged to follow the trend.

would ... really expect to find more ...," but when asked about the area of spermatozoa on the rag, he would expect to find it about the size of a male hand, and that was approximately as large as what he did find. Appellant's request to offer the testimony before the jury was rejected, to which he duly excepted.

We find no abuse of discretion which appellant concedes, as indeed he must,[10] that such is the measure of error claimed in this kind of situation. *Saunders v. State,* 572 S.W.2d 944, 949 (Tex.Cr.App. 1978). Appellant argues that the excluded testimony was "crucial" in that it went directly to veracity of Deb's assertion that penetration was accomplished by him, citing *Vasquez v. State,* 145 Tex.Cr.R. 376, 167 S.W.2d 1030[11] (1943). But that fact was also established by the testimony of the doctor who did a speculum examination of her and took smears from cavities of her body that revealed evidence of recent sexual intercourse.[12] When the Medical Center chemist detected acid phosphatase on vaginal swabs and the tampon submitted, but sperm was not found, her testimony that appellant penetrated but shortly ejaculated on her leg was corroborated—though corroboration was not necessary. *Harris v. State,* 473 S.W.2d 37 (Tex.Cr.App.1971). Besides, the point appellant was seeking to make with his hypothetical question seems to have been understood when the chemist "just couldn't say" where all the other sperm went. The trial court did not abuse

its discretion in excluding his opinion that, given a complete ejaculation on the leg being wiped up on the rag, he "would ... really expect to find more [sperm]." See *Pettigrew v. State,* 163 Tex.Cr.R. 194, 289 S.W.2d 935, 937–938 (1956). The ninth ground of error is overruled.

Though appellant dropped from sight for a while, he told the jury he was trying to employ an attorney to be available when he did surrender; *on crossexamination he said he left Abilene and "went to the next county" and elsewhere, being vague about it.*[13] However, he did admit making a phone call to a friend, whose car he was driving, and *telling him when he would return and go to the police station.* But he claimed not to know or recall where he made the call, when first asked, and later said "out of the city," "to the west," wanting not to "pinpoint" the place. In rebuttal the prosecutor produced the friend of appellant whom appellant visited during the afternoon of September 22, and whose car he borrowed on the promise to return it at a certain time. *Appellant did not, and during the ten o'clock news time the friend called the police and reported his car had been stolen by appellant.* Meanwhile, at about 7:30 p.m., appellant called collect, said he "ran into a little trouble" *and could not bring the car back until eleven,* when he would explain that "everything's all right." Where appellant was at the time was not mentioned in the telephone conversation.

---

**10.** This is an appropriate place to pause long enough to remark on the high quality of appellate advocacy in this cause. The attorney for appellant, himself a former district attorney, tried the case ably, protected the record and has fully researched support for every ground of error; the District Attorney, whose predecessor presented the case for the State, has done a thorough job in her brief upholding his actions. So, we commend both counsel for their lawyering.

**11.** "In a prosecution for rape, it is essential to prove penetration of the female organ by the male organ of the accused. This may be done by circumstantial evidence, though it is more frequently used to corroborate direct testimony." *Id.,* 167 S.W.2d at 1032. The judgment of conviction was reversed, mainly because the State did not present the eight year old rape

victim to testify before the jury that assessed the death penalty.

**12.** "A speculum is an instrument used in inserting into the vagina to open the vagina so that the mouth of the womb of the cervix can be examined," from which smears are taken.

**13.** When asked where else he drove, appellant said he was more or less "cruising," driving to "a number of places," "killing time," until contact was made with the attorney he wanted to hire. Now both the State and appellant, himself, say his testimony was that "he had not left the Abilene area," that Friday afternoon and evening. While he may have been trying to leave that impression with the jury, his vague testimony was otherwise.

The State had the witness identify his telephone bill, and sought to show from it that a collect call had been accepted on September 22. Appellant objected to testimony about what the bill reflected since it had not been admitted in evidence, whereupon the State offered it. Appellant then made the perfectly valid objection that the content of the bill is hearsay and was being "offered for the truth of the matter asserted thereon." The prosecution responded the bill is "a record that the witness can refresh his memory from;" the trial court overruled the objection, and admitted the bill. From the face of the long distance portion of the bill, the witness testified that a collect call by appellant was made from Sudan, "northwest of Lubbock," at 7:00 p.m. On crossexamination, however, he admitted he did not *know* it had been made from Sudan and that the time was given by him on direct was his "best recollection."

The exhibit was erroneously admitted for the purpose stated by the prosecutor. The witness had recalled the time of the telephone conversation. The witness had *no* recollection, either present or past, as to place of origin of the telephone call because it was never given in the telephone conversation. Ray, Texas Law of Evidence § 541, 1 Texas Practice 512.

In this one instance the State has misread the record—"the phone bill was used solely to *refresh his recollection* as to the time of the call, its duration, and *where the call was made from*"—to argue that "admission of the telephone bill into evidence . . . was in fact superfluous in view of the fact that the witness was testifying from his personal recollection." Again, though, the witness had no knowledge, much less recollection, that the call was made from Sudan.

Nevertheless, we do not agree with appellant's contention that "the error herein is not harmless due to the prejudicial effect it had on the credibility of appellant." Viewing the matter realistically, we find that rational jurors were provided by appellant, himself, several bases for doubting his veracity.

For one example, even though his lawyer on his direct examination first brought out his criminal record of four prior convictions, alluded to *ante,* their adverse impact on credibility is widely known and regarded. The prosecution did not waste a moment on crossexamination before directly laying out the written record and proving that two "house burglary" offenses were committed by him while he was on probation from the first one, followed by the federal conviction for possession of an unregistered firearm—a sawedoff shotgun belonging to a U.S. Marshal—with five years probation beginning October 1, 1976.[14] Thus, the jury learned that appellant was at that moment on both state parole and federal probation, being tried for an offense involving yet another burglarious entry into a habitation with a weapon that at first glance appeared to be a sawedoff shotgun.

For another, appellant first would have the jury believe that he did not know or did not recall from where he made the collect call to his friend, but moments later placed himself making it from out of Abilene "to the west," and indicated he preferred not to reveal it.[15] Moreover, though he had contacted his lawyer Friday morning, appellant attributed delay in surrendering to him, and

---

14. We digress to express disapproval of the manner in which the prior criminal record has been made to appear in the record. Single pages of what was prepared as a "pen packet" have been cut into three pieces and each section reproduced on its own page in the record. The result is thirty odd pages of highly disconcerting material. Same is true of the federal judgment—its parts take up five pages. See Tex.Cr.App. Rule 201(d), promulgated after the instant record was prepared.

15. During this part of the crossexamination as to his whereabouts and activities, with the sanction of the careful trial judge, appellant was invoking from time to time the attorney-client privilege and seems to have been trying to do so again but was interrupted by another question:

"A: To the west. To pin point I don't—
Q: Did you ever go anywhere near Fort Worth that night?
A: No.
Q: You went west and not east?
A: That's correct."

made it appear that he then reached an understanding with yet a third person to go together to the police station to turn himself in; he was to meet him at the home of his friend, having confirmed that arrangement in another telephone conversation with the third person. Of course, appellant was arrested as soon as he arrived back at his friend's house in his car. The jury was free to believe that appellant had no intention of surrendering around midnight of a Friday, having avoided apprehension for more than forty eight hours.

In short, regardless of where he actually was when appellant called his friend to say when he would return the car, much of his testimony is so inherently incredible that the jury could have been little influenced by admission of the telephone bill. Since reversible error is not shown, we overrule ground of error five.

In his second and third grounds of error appellant contends, respectively, that there is fundamental error in the charge of the trial court in that it authorized the jury to find him guilty on a theory not alleged by indictment, and that the trial court erred in charging, over his objection, that the jury was permitted to convict him on an expansive charge that went beyond the indictment.

The first contention, however, is posited on the deficiency he perceives in the indictment. Thus, he argues that, since the indictment did not factually allege he had sexual intercourse with Deb, authorizing the jury to convict if it did find that he had sexual intercourse with her presents fundamental error. Because we have rejected his construction of the indictment, a faulty premise flaws his argument. We overrule ground of error two.[16]

■■■ The second contention, though, is somewhat troublesome. In the abstract part of the charge, the trial court generally stated initially what constitutes rape, as prescribed by V.T.C.A. Penal Code, § 21.-02(a). Then, the jury was told that inter-

course is without consent when compelled by *force,* using the language of § 21.-02(b)(1)—just as alleged in the indictment. But the trial court added that intercourse is also without consent when "he compels her to submit or participate by any *threat,* communicated by actions, words or deeds, that would prevent resistance by a woman of ordinary resolution, under the same or similar circumstances, because of a reasonable fear of harm," as the 1975 amendment to § 21.02(b)(2) had prescribed—a manner of *showing* lack of consent that the indictment did *not* allege. Finally the jury was informed abstractly that "rape becomes aggravated when submission is compelled by threat of serious bodily injury or death to be imminently inflicted on *anyone,*" that being taken from § 21.03(a)(2).

Similarly, the preliminary instructions delineating the elements of the offense of aggravated rape were cast in statutory terms of force and threats and the aggravating factor of threat to injure Deb.

In applying the law to the facts the trial court charged that if the jury found that appellant had sexual intercourse with Deb "and that the Defendant used force on [Deb] on the occasion in question, as well as threats, to accomplish the sexual intercourse, and that such force was sufficient to overcome such earnest resistance as might reasonably be expected under the circumstances at the time, *and* that such threat or threats, if any, were such as would prevent resistance by a woman of ordinary resolution under the same or similar circumstances because of a reasonable fear of harm, *and* that the Defendant compelled submission to the rape by threat of death or serious bodily injury to be imminently inflicted on her..." then the jury would find appellant guilty "as charged in the indictment."

As already demonstrated, however, the indictment charged nonconsensual intercourse by force, not threats; threat was the alleged aggravating feature. Appellant made written objections to inclusion of

16. We also overrule ground of error twelve, complaining that the trial court refused to

charge on assault under V.T.C.A. Penal Code, § 22.01(a), since it is based on the same thesis.

threat in the abstract part of the charge, in the preliminary portion and in applying the law to the facts, each of which was overruled. Had the charge presented the two means disjunctively his objections would have merit. See, e.g., *Scott v. State*, 599 S.W.2d 618 (Tex.Cr.App.1980).[17] But the effect of conjunctive submission was to require the State to prove and the jury to find not only force, as alleged, but also threat, which though not averred as a means of nonconsensual intercourse was said to be the aggravating factor.

It is axiomatic that an appellant may not complain that the charge increases the burden of factual proof on the State. *Brooks v. State*, 580 S.W.2d 825, 834 (Tex.Cr.App. 1979). When the jury returned a general verdict of guilty, it necessarily believed beyond a reasonable doubt that both force and threat had rendered the intercourse nonconsensual. Therefore, it was not authorized nor did it convict on a finding that threat *alone* rendered participation in sexual intercourse nonconsensual. And, in any event, threat was alleged as the aggravating factor, so no harm was inflicted on appellant by this particular charge under the circumstances shown by evidence. In essence the jury concluded the show of force by appellant in exhibiting a deadly weapon and applying painful thumb cuffs and thus restraining Deb amounted to threat of death *or* serious bodily injury. Ground of error three is, accordingly, overruled.

■ Because the investigating officer agreed that Deb had told him she "most likely thought it was a toy type gun" brandished by appellant, he now contends the trial court erred in refusing to charge the jury on the lesser included offense of rape under V.T.C.A. Penal Code, § 21.02. During crossexamination of Deb, appellant asked and she answered, as follows:

"Q:  All right. It was a pistol type of— could you make a determination of

whether or not it was an actual pistol, or some type of—or something other than an actual gun?

A:  It was definitely a gun."

We regard the concession by the officer as more in the nature of impeachment than direct substantive evidence that Deb truly believed the pistol was a toy gun. See Ray, Law of Evidence §§ 687, 688, 1 Texas Practice 625–627. Therefore, what she had said to the officer is not evidence that serves to negate the aggravating element alleged, such that a charge on rape was required. Ground of error eleven is overruled.

All grounds of error having been considered and overruled, we find no reversible error.

The judgment of conviction is affirmed.

---

17.  Appellant's reliance on *Lowry v. State*, 579 S.W.2d 477 (Tex.Cr.App.1979) is misplaced, for we have examined the charge given by the court in that case and it clearly authorized the jury to convict if it found aggravation by causing serious bodily injury *or* threatening

death *or* serious bodily injury. That kind of submission in the disjunctive does render a charge defective, as *Scott v. State*, supra, as well as many other decisions, point out. See *Robinson v. State*, 553 S.W.2d 371 (Tex.Cr. App.1977) and its progeny.