**AFFIRM; and Opinion Filed November 9, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-14-01115-CR
No. 05-14-01116-CR

**BRIAN WAYNE DRAKE, Appellant**

V.

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 204th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause Nos. F-1314123-Q & F1330911-Q**

## MEMORANDUM OPINION

Before Justices Bridges, Francis, and Myers
Opinion by Justice Francis

A jury convicted Brian Wayne Drake of two aggravated robberies with a deadly weapon and assessed punishment at concurrent twenty-year sentences. In one issue, appellant contends the trial court erred by refusing his request to charge the jury on the lesser-included offense of robbery. We affirm.

On April 14, 2013, Leo Vargas was working as the store manager of a Burger King in Grand Prairie. Vargas was in the office doing routine paperwork when he heard his employee, Laura Enriquez, scream. Vargas turned and saw appellant holding a gun to Enriquez's head. Appellant demanded the money, and Vargas began gathering the money from the store safe and registers. After about four to six minutes, Vargas tried to get appellant to leave by falsely telling him the police had arrived. Appellant ran to the front door, saw the police were not there, and went back to Vargas and said he was going to kill him. Vargas, who was standing near the

drive-thru window, jumped out the window. Once outside, he took pictures of appellant's vehicle.

On cross-examination, Vargas said he did not know what type of gun appellant was holding and described it as a "black weapon." The following questions and answers occurred:

[DEFENSE COUNSEL]: But isn't it true that you, specifically, told [the police officer] black semiautomatic pistol with a red tip?

[VARGAS]: Those are the ones that the Grand Prairie [police] have. The officer took it out and showed it to me. And he said, Is it something like this. And I said, Yes.

[DEFENSE COUNSEL]: But didn't you say that the suspect entered the store and pulled out a black semiautomatic pistol with a red tip?

[VARGAS]: That's what I saw.

Laura Enriquez testified appellant pointed a gun at her and demanded money. The prosecutor asked if the gun was a "real gun," and Enriquez said she did not "recognize the weapons" and did not know if it was "real" or "fake." She did testify, however, that she thought appellant was going to "fire at" her and Vargas and kill them. A surveillance video of the robbery was admitted into evidence.

Two weeks later, on May 5, 2013, Matthew Romero was working at the Burger King in Cedar Hill. That morning before the restaurant opened, appellant pulled up in a white SUV and acted like he was having car trouble. When the restaurant opened, appellant entered, pulled out a gun, held it "point-blank" to Romero's face, and demanded the money. The prosecutor asked Romero if he had seen guns before, and Romero said "[a] few." The prosecutor then asked if appellant's gun was a "real gun," and Romero replied, "It looked real." Appellant forced Romero to the back office, where Romero took the money from the registers and gave it to appellant. As appellant was leaving the restaurant, the store manager was entering. As the two passed each other, appellant said, "I just robbed you." The manager wrote down the license plate

number of appellant's vehicle and called the police. Still shots from a surveillance video were admitted into evidence.

Later that day, Cedar Hill police identified appellant as a suspect in the robbery and arrested him at his apartment in Dallas. While searching him, they asked him "where's the gun." Appellant directed them to his right hip pocket or waistband of his pants, and police seized the gun, which was loaded. The police also searched appellant's apartment and recovered a Burger King bag containing $910 in cash, as well as clothing that matched what appellant was wearing during the Cedar Hill robbery.

Police transported appellant to the police station, where he agreed to talk to them. During the interview, Detective William Hutson asked appellant if he used the same gun in both the Grand Prairie and Cedar Hill robberies, and appellant nodded that he did. Hutson testified the gun used in the robberies was the one found on appellant when he was arrested. The gun and bullets were admitted as evidence.

On cross-examination of Hutson, defense counsel asked Hutson if he had ever seen a firearm with a "red tip," and Hutson said he had. When asked his "definition of a tip," Hutson said that it could "be at the end of the gun barrel." Defense counsel then asked what type of gun "would that be," and Hutson said it could be a regular firearm, a BB gun, a pellet gun, or an airsoft gun. Hutson agreed there was difference between a firearm and a pellet or air gun. At that point, the following colloquy occurred:

> [DEFENSE COUNSEL]: Okay. So if a -- if the witness from Grand Prairie stated that the gun that he saw had a red tip on it, that very well could have been an air gun or a pellet gun, something other than an actual firearm, correct?
>
> [Prosecutor's objection overruled.]
>
> [DEFENSE COUNSEL]: Correct?
>
> [DETECTIVE HUTSON]: I haven't talked to a witness from Grand Prairie.

[DEFENSE COUNSEL]: Okay. But you can answer my question. If -- it could be -- because you just stated if some type of weapon, firearm, or looks like a firearm, that has a red tip, it could very well be a air gun, correct?

[PROSECUTOR]: Your Honor, I'm going to object. Calls for speculation.

[TRIAL COURT]: I don't know if the man knows the answer.

Do you know the answer, sir?

[DETECTIVE HUTSON]: I'm not sure what she's trying to ask. I mean, is there BB guns and pellet guns and regular firearms with red tips, yes. So - -

[DEFENSE COUNSEL]: Okay.

[DETECTIVE HUTSON]: -- I've stated that.

[TRIAL COURT]: All righty.

Hutson then agreed that pellet guns and air guns are not firearms. When then asked if a pellet gun or air gun is a deadly weapon, he responded that he believed a pellet gun could "cause someone to die" but he did not believe a "BB gun" could.

As an element of aggravated robbery, the indictments alleged appellant used or exhibited a deadly weapon, a firearm. At the charge conference, appellant requested an instruction on the lesser-included offense of robbery. After a brief discussion about the evidence regarding a "red tip," the trial court denied the request. In his sole issue, appellant contends the trial court erred by refusing to charge the jury on robbery.

A defendant is entitled to an instruction on a lesser-included offense when the lesser offense is included within the proof necessary to establish the offense charged and some evidence is presented that would permit a jury to rationally find that if the defendant is guilty, he is guilty only of the lesser offense. *Rousseau v. State,* 855 S.W.2d 666, 672–73 (Tex. Crim. App. 1993). As alleged here and as acknowledged by the State, robbery is a lesser-included offense of aggravated robbery, the difference between the two being the use or exhibition of a deadly weapon. *See* TEX. PENAL CODE ANN. § 29.02, 29.03(a)(2) (West 2011). The indictment alleged

–4–

the deadly weapon was a firearm, and the charge defined deadly weapon as a "firearm." Thus, appellant was entitled to an instruction on robbery if there was some affirmative evidence in the record from which a rational jury could find that he did not use or exhibit a firearm. Anything more than a scintilla of evidence is sufficient. *Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012). But the evidence must establish the lesser-included offense as a "valid, rational alternative to the charged offense." *Id.*

In making our review, we evaluate the evidence in the context of the entire record, but do not consider whether the evidence is credible, controverted, or in conflict with other evidence. *Hall v. State*, 158 S.W.3d 470, 473 (Tex. Crim. App. 2005). So while it is true that the evidence may be weak or contradicted, the evidence must still be directly germane to the lesser-included offense and must rise to the level that a rational jury could find that if appellant is guilty, he is guilty only of the lesser-included offense. *Cavazos*, 382 S.W.3d at 385. "Meeting this threshold requires more than mere speculation—it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense." *Id.*

Appellant argues he was entitled to an instruction on robbery because there was "more than a scintilla of affirmative evidence" that the gun used in the robberies was not a real gun. In particular, he directs us to the following evidence: (1) Romero's direct testimony that the gun "looked real"; (2) Enriquez's direct testimony that she did not "recognize" weapons and did not know whether the one used by appellant was real or fake; (3) Vargas's testimony on cross-examination that the gun had a "red tip"; and (4) Detective Hutson's testimony on cross-examination that a gun with a red tip could be a regular firearm, a BB gun, a pellet gun, or an air soft gun, and that pellet and air guns are not firearms. After reviewing the evidence, we cannot agree that this evidence raises the issue of robbery.

As explained by the Houston court in *Penaloza v. State*, 349 S.W.3d 709, 712 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd), Texas courts have examined several cases where a witness testified a toy gun may have been used in the commission of an offense.  Generally, this testimony arises through concessions by the complaining witness during cross-examination, or through claims of prior inconsistent statements issued by third parties.  *Id.*  In such cases, courts have typically treated evidence of a toy gun as evidence admitted solely for purposes of impeachment, and not direct substantive evidence that a deadly weapon was not used or exhibited.  *See Wilhoit*, 638 S.W.2d 489, 499 (Tex. Crim. App. 1982) (regarding as impeachment evidence testimony from investigating officer that complainant previously said she "most likely thought it was a toy type gun");  *Hosea v. State*, No. 14-08-00337-CR, 2009 WL 6338617, at *3 (Tex. App.—Houston [14th Dist.] Oct. 6, 2009, pet. ref'd) (mem. op., not designated for publication) (stating complaining witness's acknowledgement on cross-examination that gun could have been toy only operated as impeachment evidence concerning witness's credibility); *Thomas v. State*, No. 02-09-00441-CR, 2011 WL 1833112, at *2 (Tex. App.—Fort Worth May 12, 2011, no pet.) (mem. op., not designated for publication) (concluding that complainants' testimony they lacked experience with handguns and counsel's intimations through questions to them that gun could have been toy was not affirmative evidence negating deadly weapon element of aggravated robbery); *Briscoe v. State*, No. B14-89-00713-CR, 1990 WL 79845, at *1 (Tex. App.—Houston [14th Dist.] June 14, 1990, pet. ref'd) (stating that rather than establishing that firearm was *not* used, the evidence only showed that witness could not tell if gun was real).

Here, no affirmative evidence was adduced to show the gun used by appellant in the robberies was a fake gun.  No witness testified appellant used a toy gun during the robberies. Romero testified the gun "looked real." And Enriquez's testimony that she did not know if the gun was real or fake was not affirmative evidence that a firearm was *not* used.  *See Penaloza*,

349 S.W.3d at 712 (complainant's testimony indicating that gun may have been fake was not evidence affirmatively showing weapon was toy gun); *Briscoe*, No. 14-89-00713-CR, 1990 WL 79845, at \*1 (same).

As for the "red tip" evidence, Vargas testified on cross-examination that the gun had a "red tip," but nothing in his testimony suggested he did not believe the gun was real. To the contrary, Vargas said he jumped out of the drive-thru window in fear for his life after appellant pointed the gun at him and said he was going to kill him. Even coupled with Hutson's testimony, it did not raise robbery as a valid, rational alternative. Answering abstract questions on cross-examination, Hutson testified that some real guns and some fake guns have red tips, but he did not testify about the gun in this case and, specifically, whether it was real or fake. *Cf. Massey v. State*, 933 S.W.2d 141, 155 (Tex. Crim. App. 1996) ("That a witness agrees that anything is possible and that he cannot be 100 percent certain of anything does not raise *evidence* for purposes of a lesser included offense."). And, even if this evidence rose to the level of a witness conceding the possibility that a fake gun was used, such a concession would be nothing more than impeachment evidence. *See Wilhoit*, 638 S.W.2d at 499.

Finally, the actual gun used in both robberies was admitted into evidence. An officer testified that when they found the gun on appellant at the time he was arrested, a bullet was in the chamber and it was "ready to fire." The officer testified the gun was a deadly weapon.[1]

Having reviewed the evidence, we conclude the evidence here does not rise to a level that would convince a rational jury to find that if appellant is guilty, he is guilty only of the lesser-included offense of robbery. *See Cavazos*, 382 S.W.3d at 385 ("Pulling out a gun, pointing it at someone, pulling the trigger twice, fleeing the scene (and the country), and later telling a friend

---

[1] In closing argument, the prosecutor urged the jury to "take this gun" and "look at it closely" because "there is a small red dot at the end of this weapon." Our record contains only a photograph of the gun, but it does not depict the end of the weapon.

"I didn't mean to shoot anyone" does not rationally support an inference that Appellant acted recklessly at the moment he fired the shots.")  We therefore overrule the sole issue.

We affirm the trial court's judgment.

/Molly Francis/
MOLLY FRANCIS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

141115F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BRIAN WAYNE DRAKE, Appellant

No. 05-14-01115-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 204th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1314123-Q.
Opinion delivered by Justice Francis;
Justices Bridges and Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 9th day of November, 2015.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BRIAN WAYNE DRAKE, Appellant

No. 05-14-01116-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 204th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1330911-Q.
Opinion delivered by Justice Francis;
Justices Bridges and Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 9th day of November, 2015.